IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| EDWARD GALLEGOS, as Personal Representative of the Estate of MARY DIANA MOE, Deceased, | CV 22–68–M–DLC |
| Plaintiff, | ORDER |
| vs. | |
| BNSF RAILWAY COMPANY, a Delaware corporation, | |
| Defendant. | |

Defendant BNSF Railway Company ("BNSF") has filed motions for summary judgment and partial summary judgment regarding preemption (Doc. 33), strict liability (Doc. 38), and enforceability of Mont. Code Ann. § 27-1-703 (Doc. 42). Plaintiff has also filed motions for summary judgment and partial summary judgment regarding preemption (Doc. 53), strict liability (Doc. 48), non-party affirmative defenses (Doc. 55), and various other affirmative defenses (Doc. 60). Numerous evidentiary motions remain outstanding (Docs. 77, 78, 80, 82), as does BNSF's motion for spoliation sanctions (Doc. 45). The Court will address these latter motions by separate order.

1

## FACTUAL BACKGROUND[1]

Decedent, Mary Diana Moe, moved to Libby, Montana, in 1978.  Ms. Moe

resided in Libby until her death on December 22, 2022.  Ms. Moe's cause of death

is listed as mesothelioma caused by exposure to asbestos.  Plaintiff, Edward

Gallegos, is the duly appointed personal representative of the estate of Mary Diana

Moe.

W.R. Grace operated vermiculite mines near Libby from 1963 until 1990.

BNSF operated a railyard in downtown Libby that shipped processed vermiculite

ore for W.R. Grace.  Vermiculite ore contains high concentrations of amphibole

asbestos.  As a result of the vermiculite mining and transport operations there is

significant asbestos contamination in and around Libby.

## PROCEDURAL BACKGROUND

Decedent originally filed a complaint on April 1, 2022, alleging that

Defendant BNSF's operations in Libby, Montana, caused Ms. Moe's

mesothelioma.  (*See* Doc. 1.)  Decedent alleged claims for negligence and strict

liability under Montana common law.  (*Id.* at 4–9.)  Plaintiff then filed the First

Amended Complaint January 20, 2023, following Ms. Moe's death. (Doc. 27.)

The First Amended Complaint alleges that BNSF negligently exposed

---

[1] These facts are derived from the undisputed facts of the parties and those facts which the Court deems to be substantively undisputed.  For a more detailed discussion on the history of vermiculite mining in Libby, Montana, *see BNSF Ry. Co. v. Eddy*, 459 P.3d 857 (Mont. 2020).

Decedent to asbestos by:

A. Failing to properly inspect for unsafe conditions related to asbestos and asbestos contaminated vermiculite;

B. Failing to correct unsafe conditions relating to asbestos and asbestos contaminated vermiculite;

C. Failing to warn of the hazards associated with exposure to asbestos and asbestos contaminated vermiculite;

D. Failing to provide proper safeguards against exposure to asbestos and asbestos contaminated vermiculite;

E. Failing to prevent the release of an abnormally dangerous substance within its control;

F. Failing to exclude members of the public from its property containing hazardous substances;

G. Failing to conform its activities in Lincoln County to applicable statutes (e.g. § 50-78-101, MCA, et seq., and 29 U.S.C. Ch. 15) and regulations; and

H. Failing to conform its activities to its own plans, rules and standards.

(*Id.* ¶ 19.)  Plaintiff further alleges that BNSF is strictly liable for its abnormally dangerous activities in Libby.  (*Id.* ¶ 24.)  Plaintiff seeks compensatory and punitive damages, including damages for wrongful death.  (*Id.* at 10–12.)  BNSF denies the allegations and has also filed numerous affirmative defenses.  (*See* Doc. 28.)  Both parties have moved for summary judgment and partial summary judgment on various issues in this case.

## LEGAL STANDARD

This Court can resolve an issue summarily if "there is no genuine dispute as to any material fact" and the prevailing party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Material facts are those which may affect the outcome

of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual

dispute is genuine when there is sufficient evidence for a reasonable factfinder to

return a verdict for the other party.  *Id.*  If the moving party meets its initial

responsibility, the burden then shifts to the opposing party to establish that a

genuine issue of fact exists.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586 (1986).

DISCUSSION

## I.      Preemption

BNSF moves for summary judgment on Plaintiff's negligence and strict

liability tort claims under Montana common law, arguing that such claims are

preempted by the Hazardous Materials Transportation Act ("HMTA") and the

Federal Railroad Safety Act ("FRSA").  (Doc. 34 at 1.)  Plaintiff cross-moves for

summary judgment on the issue of preemption.  (Doc. 54 at 2.)

Article VI of the United States Constitution provides that "the Laws of the

United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl. 2.

As such, any law that conflicts with federal law is "without effect."  *Cipollone v.

Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992).  State law is preempted by federal

law where: (1) Congress explicitly defines the extent to which its enactments

preempt state law (express preemption); (2) state law regulates conduct in a field

that Congress intended the federal government to exclusively occupy (field

4

preemption); and (3) it is impossible to comply with both state and federal requirements or state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress (conflict preemption). *Eng. v. Gen. Elec. Co.*, 496 U.S. 72, 78–80 (1990).  The overriding consideration is whether Congress intended to preempt state law.  *Id.* at 80; *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).  The Court should find state law preempted by federal law if Congress's intent either is explicitly stated in the statute's language or is implicitly contained in its structure and purpose.  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95 (1983).

First, BNSF argues that the HMTA expressly preempts Plaintiff's claims because the HMTA excludes vermiculite ore from its definition of "hazardous material."  *Id.* at 34.  The HMTA contains an express preemption clause that states:

> [U]nless authorized by another law of the United States, a law, regulation, order, or other requirement of a State . . . about any of the following subjects, that is not substantively the same as a provision of this chapter, a regulation prescribed under this chapter, or a hazardous materials transportation security regulation . . . , is preempted:
>> (A) the designation, description, and classification of hazardous material.
>> (B) the packing, repacking, handling, labeling, marking, and placarding of hazardous material.
>> (C) the preparation, execution, and use of shipping documents related to hazardous material and requirements related to the number, contents, and placement of those documents.
>> (D) the written notification, recording, and reporting of the unintentional release in transportation of hazardous material and other written hazardous materials transportation incident reporting involving State or local emergency responders in the

initial response to the incident.

(E) the designing, manufacturing, fabricating, inspecting, marking, maintaining, reconditioning, repairing, or testing a package, container, or packaging component that is represented, marked, certified, or sold as qualified for use in transporting hazardous material in commerce.

49 U.S.C. § 5125(b).   The HMTA defines "hazardous material" as "a substance or material the Secretary [of Transportation] designates under section 5103(a) of this title."   *Id.* § 5102(2).   The Department of Transportation promulgated regulations addressing the packaging of "hazardous materials," including asbestos, for transportation.   *See* 49 C.F.R. § 172.102(a) (2023).   These regulations explicitly exclude "[a]sbestos that is immersed or fixed in a natural or artificial binder material, such as . . . mineral ore."   *Id.* § 172.102(c)(1)(156).   BNSF argues that because Libby vermiculite is a "mineral ore" not classified as a "hazardous material" under the HMTA's transport-packaging regulations, it must remain free from any regulation, including liability for its negligent transportation or handling of asbestos under Montana's common law of torts.   (Doc. 34 at 5–11.)

Second, BNSF argues that the FRSA expressly preempts Plaintiff's claims because the FRSA imposes regulations related to railroad safety that preempt all state regulations aimed at the same safety concerns.   The FRSA's express preemption clause states:

A State may adopt or continue in force a law, regulation, or order

6

related to railroad safety or security until the Secretary of
Transportation (with respect to railroad safety matters) . . . prescribes a
regulation or issues an order covering the subject matter of the State
requirement. A State may adopt or continue in force an additional or
more stringent law, regulation, or order related to railroad safety or
security when the law, regulation, or order—

    (A) is necessary to eliminate or reduce an essentially local safety
    or security hazard;
    (B) is not incompatible with a law, regulation, or order of the
    United States Government; and
    (C) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106(a)(2).  BNSF argues that Plaintiff's state law tort claims

are substantially subsumed by the federal regulations—specifically the

FRSA's regulations on shipping documents, inspection of freight cars, train

speed, and transportation of hazardous materials by rail.  (Doc. 34 at 13–14.)

    This Court recently addressed the exact same preemption argument in *Wells*

*ex rel. Est. of Wells v. BNSF Ry. Co.*, No. CV-21-97-GF-BMM, 2023 WL 5097872

(D. Mont. Aug. 9, 2023).  That case also involved Montana common law claims

for negligence and strict liability stemming from BNSF's transportation and

handling of asbestos in Libby.  *Id.* at *1–2.  The Court relied on its past decisions

on this issue, as well as the opinion of the Montana Supreme Court, to hold that

Montana common law tort claims are not preempted by the HMTA or FRSA.  *Id.*

at *14–16 (citing *Deason v. BNSF Ry. Co.*, No. CV-17-76-GF-BMM-JTJ, 2018

WL 3601236, at *3–7 (D. Mont. July 27, 2018); *Underwood v. BNSF Ry. Co.*, No.

CV-17-83-GF-BMM-JTJ, 2018 WL 3601238, at *3–7 (D. Mont. July 27, 2018);

*Murphy-Fauth v. BNSF Ry. Co.*, No. CV-17-79-GF-BMM-JTJ, 2018 WL 3601235, at *3–7 (D. Mont. July 27, 2018); *Eddy*, 459 P.3d at 866).

The Court finds it unnecessary to revisit this issue; BNSF presents no new arguments or evidence that would lead this Court to conclude any differently than it has previously.  Plaintiff has not raised the issue of collateral estoppel, so the Court declines to address whether issue preclusion applies here.  Accordingly, the Court grants Plaintiff's cross-motion for summary judgment and denies BNSF's motion for summary judgment. BNSF's affirmative defense number twelve, (Doc. 28 at 7, ¶ 12), is hereby stricken.

## II.    Strict Liability

BNSF next moves for partial summary judgment on Plaintiff's strict liability claim, arguing BNSF should not be held strictly liable because it was not engaged in abnormally dangerous activity, or in the alterative, the Restatement (Second) of Torts § 521 common carrier exception applies to BNSF's activities in Libby. (Doc. 39 at 6–7.)  Plaintiff cross-moves for summary judgment on the same issues. (Doc. 48.)

### 1.  Abnormally Dangerous Activity

BNSF argues that it is not collaterally estopped from litigating whether its transportation of vermiculite was abnormally dangerous.  (Doc. 39 at 8.)  Plaintiff responds that the Montana Supreme Court's decision in *Eddy* precludes BNSF

from relitigating this issue.  (Doc. 49 at 6.)

The Court finds that BNSF is collaterally estopped from litigating this issue. Because the Court is exercising its diversity jurisdiction over this matter, state substantive law controls the issue of collateral estoppel.  *See, e.g.*, *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) ("Because this is a diversity case, we apply the collateral estoppel rules of the forum state.").  Collateral estoppel "bars the reopening of an issue that has been litigated and resolved in a prior suit." *Adams v. Two Rivers Apts., LLLP*, 444 P.3d 415, 419 (Mont. 2019).  Under Montana law, the doctrine of collateral estoppel "bars relitigation of an issue if four elements are met: (1) an identical issue raised was previously decided in a prior adjudication; (2) a final judgment on the merits was issued in the prior adjudication; (3) the party against whom collateral estoppel is asserted was a party or in privity with a party in the prior adjudication; and (4) the party against whom issue preclusion is asserted was afforded a full and fair opportunity to litigate any issues that may be barred."  *Brishka v. Dep't of Transp.*, 487 P.3d 771, 775 (Mont. 2021).

This Court has already ruled that "BNSF is collaterally estopped from arguing that [its] handling of asbestos in Libby was not abnormally dangerous" based on the Montana Supreme Court's decision in *Eddy*.  *Wells ex rel. Est. of Wells v. BNSF Ry. Co.*, No. CV-21-97-GF-BMM, 2023 WL 6807147, at *5 (D.

9

Mont. Oct. 16, 2023).  BNSF presents no compelling argument that would lead this Court to change its opinion on this issue.  Accordingly, the Court rejects BNSF's argument and again holds that BNSF is collaterally estopped from arguing that its handling of asbestos in Libby was not abnormally dangerous.

### 2.  Common Carrier Exception

BNSF argues in the alternative that the common carrier exception applies, thereby relieving it of all liability for "any railway activities."  (Doc. 39 at 31.) Plaintiff responds that the common carrier exception "does not apply to BNSF's harboring of and failure to control an open-air repository for asbestos waste on its property."  (Doc. 49 at 24.)  Thus, the Court must determine whether BNSF is limited in its use of the common carrier exception as a defense in this matter.

The Montana Supreme Court has adopted the Restatement (Second) of Torts § 521, which provides "the rules as to strict liability for abnormally dangerous activities do not apply if the activity is carried on in pursuance of a public duty imposed upon the actor as a public officer or employee or as a common carrier." *Eddy*, 459 P.3d at 873.   The common carrier exception applies if "(1) the activity is carried on in pursuance of a public duty and (2) that public duty is imposed on the actor as a common carrier."  *Id.* at 874.  The exception does not provide complete immunity: defendants are shielded from strict liability claims but

10

plaintiffs may still bring claims for general negligence.  *Id.*

In *Eddy*, the Montana Supreme Court recognized BNSF as a common carrier of vermiculite because (1) "state and federal statutes require BNSF to carry any good offered that can be shipped; and (2) "railroads have universally been considered by courts as common carriers entitled to the exception." *Id.*  However, the court also held that "BNSF's activities *other than transportation of vermiculite* are not protected by the common carrier exception." *Id.* at 875 (emphasis added). The court declined to address what those "other activities" may be; however, the court did note that "[t]he exception does not apply when an entity engages in abnormally dangerous activity for 'its own purposes.'" *Id.* (quoting *Murphy-Fauth*, 2018 WL 3601235, at *2).

BNSF takes the position that "the operation of its Libby railyard for the purposes of receiving, switching, classifying, and delivering railcars carrying vermiculite was necessary and inseparable from its public duty as a common carrier" and that "at all times these activities were an integral part of its transportation activities." (Doc. 39 at 31–32.)  In *Wells*, the Court explained that such a broad interpretation of the common carrier exception would render the concept of strict liability for abnormally dangerous activity essentially meaningless. *Wells*, 2023 WL 6807147, at *7.  The Court recognized that the "Montana Supreme Court intended for § 521's common carrier exception to be

11

construed narrowly" and that the Court "must balance the need to protect individuals and communities from dangerous activities against the public policy to provide and protect the transportation of materials throughout the country as mandated by law." *Id.*

The Court concluded that the Montana Supreme Court's "ruling in *Eddy* collaterally estop[s] BNSF from arguing against the application of strict liability for its handling of asbestos in and around the Libby railyard." *Id.* at *8. However, the Court left open the opportunity for "[d]evelopment of the record" as to which of BNSF's activities are immune from strict liability pursuant to § 521. *Id.* The Court again applies its holding in *Wells* to the present matter.

Accordingly, the Court denies BNSF's motion for partial summary judgment. The Court grants in part and denies in part Plaintiff's cross-motion for summary judgment. BNSF is collaterally estopped from arguing that its handling of asbestos in Libby did not constitute an abnormally dangerous activity. The Court declines, at this juncture in the litigation, to determine the scope of the common carrier exception with regard to BNSF's activities in Libby, subject to further development of the record.

## III. Enforceability of Mont. Code Ann. § 27-1-703 and Non-Party Affirmative Defenses

BNSF also moves for partial summary judgment to declare Mont. Code Ann. § 27-1-703 unenforceable in this matter and to instead apply § 27-1-705. (Docs.

12

42 at 2, 43 at 2–3.)   Plaintiff opposes BNSF's motion and cross-moves for summary judgment as to all of BNSF's non-party affirmative defenses.  (Doc. 55.)

## 1. Enforceability of Mont. Code Ann. § 27-1-703

Mont. Code Ann. § 27-1-703 establishes the "mechanism for allocation of responsibility where a plaintiff is injured by the acts or omissions of multiple tortfeasors." *Metro Aviation, Inc. v. United States*, 305 P.3d 832, 837 (Mont. 2013).  The statute provides, in relevant part, that "[i]n an action based on negligence, a defendant may assert as a defense that the damages of the claimant were caused in full or in part by a person with whom the claimant has settled or whom the claimant has released from liability."  Mont. Code Ann. § 27-1-703(6)(a) (1997).  A defendant may also join as a party to the action "any other person whose negligence may have contributed as a proximate cause to the injury complained of."  *Id.* § 27-1-703(4).  However, § 703 limits the persons against whom a defendant can apportion fault, stating:

> Except for persons who have settled with or have been released by the claimant, *comparison of fault with any of the following persons is prohibited*: (i) a person who is immune from liability to the claimant; (ii) a person who is not subject to the jurisdiction of the court; or (iii) any other person who could have been, but was not, named as a third party."

*Id.* § 27-1-703(6)(c) (emphasis added).

Under § 703's modified joint and several liability scheme, "[i]f for any reason all or part of the contribution from a party liable for contribution cannot be

obtained, each of the other parties shall contribute a proportional part of the unpaid portion of the noncontributing party's share and may obtain judgment in a pending or subsequent action for contribution from the noncontributing party." *Id.* § 27-1-703(5).  Except that "[a] party found to be 50% or less negligent for the injury complained of is liable for contribution under this section only up to the percentage of negligence attributed to that party." *Id.*

In contrast, § 705 establishes a pure several liability scheme in which "[a] defendant is liable only for that percentage of damages that is equal to the ratio of defendant's fault to the total fault attributed to all persons involved in the occurrence from which the action arose, including claimants, defendants, and persons not party to the action." *Id.* § 27-1-705(2).  This section only applies where § 703 is inapplicable. *Id.*

BNSF seeks to apportion liability to W.R. Grace.  BNSF argues that § 703 "is invalid and cannot be applied pursuant to its non-severability clause because federal bankruptcy law invalidates § 27-1-703(4), which gives BNSF the right to join W.R. Grace as an additional party."[2]  (Doc. 43 at 8.)  BNSF's argument

---

[2] W.R. Grace initiated Chapter 11 bankruptcy proceedings in 2001.  (Doc. 67 ¶ 1.)  These proceedings resulted in the First Amended Joint Plan for Reorganization and the creation of the WRG Asbestos PI Trust.  (*Id.* ¶¶ 2–3.)  Per the terms of the channeling injunction issued as part of the First Amended Plan for Reorganization, all asbestos-related personal injury claims that could have normally been brought against W.R. Grace must be processed through the WRG Asbestos PI Trust.  (*Id.* ¶ 3.)  Additionally, per the channeling injunction and Trust, BNSF is prohibited from joining W.R. Grace or the Trust as a party to this matter.  (*Id.* ¶ 4.)

follows as such: (1) § 703(4) gives BNSF the substantive right to join W.R. Grace as a party to this action; (2) § 703(6), itself, would not preclude the apportionment of fault to W.R. Grace; (3) federal bankruptcy law prohibits the addition of W.R. Grace as a party and therefore conflicts with § 703; (4) because federal law conflicts with state law in this case, § 703 is invalid; and (5) because § 703 is invalid, § 705 must be applied and BNSF must be permitted to apportion fault to W.R. Grace. (*See id.* at 8–11.)

The Court previously rejected this exact argument in *Wells*. 2023 WL 5097872, at *6–8. First, W.R. Grace is not a non-party with whom Plaintiff has settled or a non-party whom Plaintiff has released from liability; therefore, BNSF is not entitled to assert a non-party affirmative defense apportioning liability to W.R. Grace under § 703. The Montana Supreme Court has twice held that the assignment of fault to a non-settled, non-party is unconstitutional. *Plumb v. Fourth Jud. Dist. Ct., Missoula Cnty.*, 927 P.2d 1011, 1021 (Mont. 1996); *Newville v. State Dep't of Fam. Servs.*, 883 P.2d 793, 802 (Mont. 1994). Thus, to permit BNSF to apportion fault to W.R. Grace—a non-settled, non-party—would violate Montana Supreme Court precedent. Second, the Montana Supreme Court has also rejected the premise that § 703(4) "requires without exception a single-case determination and apportionment of all sources of negligence alleged by any party" and has explained that § 703(4) "does not necessarily require joinder of all

15

unsettled/unreleased responsible parties in very case." *Stowe v. Big Sky Vacation Rentals, Inc.*, 454 P.3d 655, 666 (Mont. 2019). Thus, BNSF is incorrect to assume it has an absolute substantive right to join W.R. Grace under § 703(4). Finally, BNSF is not precluded from separately seeking contribution from W.R. Grace in proceedings separate from this matter, including through avenues provided for in the W.R. Grace Asbestos PI Trust.

In conclusion, the Court declines to invalidate Mont. Code Ann. § 27-1-703 and the Court denies BNSF's motion for summary judgment on the enforceability of § 703.

### 2. Non-Party Affirmative Defenses

Plaintiff moves for summary judgment as to BNSF's non-party affirmative defenses that attempt to shift liability to settled non-parties or argue that Plaintiff's injuries are the result of a superseding intervening cause. (*See* Doc. 56 at 21–33.) Plaintiff argues: (1) that BNSF has failed to meet its burden under Mont. Code Ann. § 27-1-703; (2) the defenses constitute impermissible "empty chair" defenses under Montana law; and (3) that BNSF has not adequately and sufficiently plead an intervening superseding cause defense. (Doc. 56 at 15–33.)

## A. Apportionment of Fault to Settled Non-Parties[3]

In its fourteenth affirmative defense, BNSF broadly asserts that, "[p]ursuant to [§ 703] Plaintiff's claims may have been partially, or fully caused by parties that she has settled with or released from liability." (Doc. 28 at 8, ¶ 14.)

As discussed above, Montana law allows a defendant to assert certain non-party defenses against individuals with whom a plaintiff has settled or released. Mont. Code Ann. § 27-1-703(6)(a). When asserting such a defense, the defendant carries the burden of proof for the non-party's negligence, the applicable standard of care, and causation. *Id.* § 27-1-703(6)(e). The defendant must also provide the non-party notice and an opportunity to intervene and defend against the affirmative defense. *Id.* § 27-1-703(6)(f)–(g).

Plaintiff argues that BNSF has failed to meet its statutory burden to plead a settled non-party defense. In its Answer, BNSF does not identify specific individuals to whom it intends to apportion liability. However, in its response to Plaintiff's motion for partial summary judgment, BNSF identifies two parties, the State of Montana and Robinson Insulation. (Doc. 66 at 6.)

---

[3] Plaintiff also points out that fault cannot be apportioned under Mont. Code Ann. § 27-1-703 for strict liability claims. This is an accurate statement of the law, and as discussed above, BNSF may be found strictly liable in this matter. Accordingly, the Court's discussion in this section pertains only to Plaintiff's negligence claim.

BNSF contends that Plaintiff was fully aware that the State of Montana and Robinson Insulation were parties that may be named in a settled non-party defense, but that Plaintiff slept on "his/her right to conduct discovery" into BNSF's affirmative defense. (Doc. 66 at 6–7.) BNSF further states that it is sending notice to the State of Montana and Robinson Insulation. (*Id.* at 7.) BNSF also contends that it has met its burden of proof regarding negligence, standard of care, and causation. (*Id.* at 7–8.)

The Court need not address the sufficiency of the notice provided to the State of Montana and Robinson Insulation because BNSF has failed to meet its burden of proof under § 27-1-703(e). Under Montana law, expert witness testimony is required to establish duty, breach, and causation in a negligence action when those issues are "sufficiently beyond the common experience of the trier of fact and the expert testimony will assist the trier of fact in determining the issue or understanding the evidence." *Dubiel v. Mont. Dep't of Transp.*, 272 P.3d 66, 70 (Mont. 2012). The Court may grant summary judgment where a defendant fails to provide expert testimony necessary to prove its claim. *Id.* at 70; *see also Tin Cup Cnty. Water &/or Sewer Dist. v. Garden City Plumbing & Heating, Inc.*, 200 P.3d 60, 69 (Mont. 2008) (granting summary judgment where the defendant failed to provide expert testimony as to causation). This Court has previously held that, in the context

18

of a negligence claim against BNSF related to Libby asbestos, "[t]he duty of care owed . . . , and whether Robinson and/or the State of Montana breached that standard of care, stand beyond the experience of the ordinary juror and require expert testimony." *Wells*, 2023 WL 5097872, at *11.

In this case, BNSF has not provided any expert testimony as to the standard of care or breach. Accordingly, BNSF has failed to meet its burden under § 703(6)(e) and its settled non-party defense as to Robinson Insulation and the State of Montana must fail.

### B. Superseding Intervening Cause

In its sixth, seventh, and eleventh affirmative defenses, BNSF asserts:

6. Plaintiff's and Decedent's injuries and damages, if any, may have been caused by the action or conduct of persons whose conduct and actions BNSF had neither control, nor the right to control, and for whom BNSF has no liability.

7. If Plaintiff and/or Decedent incurred or sustained any losses, damages, or injuries, said losses, damages or injuries may have been contributed to and/or caused, by the carelessness or negligence of persons, corporations, or entities other than BNSF.

11. Some or all of the Plaintiff's and Decedent's injuries or conditions may be apportioned to illnesses, conditions, injuries or other casual factors not caused by BNSF.

(Doc. 28 at 7, ¶¶ 6, 7, 11.) In its fifteenth affirmative defense, BNSF asserts: "Plaintiff's claims may be the result of a superseding intervening cause." (*Id.* at 8, ¶ 15.)

19

"Empty-chair defenses are those that attempt to attribute fault to an unnamed third-party.  Such defenses are prohibited under Montana law." *Teague v. Remington Arms Co., LLC*, No. CV 18-184-M-DLC, 2022 WL 16574241, at *6 (D. Mont. Nov. 1, 2022) (citing *Plumb*, 927 P.2d 1011; *Newville*, 883 P.2d 793).  Thus, "a defendant may introduce non-party conduct only for the purpose of demonstrating that the non-party conduct was a superseding intervening cause of plaintiff's damages."  *Faulconbridge v. State*, 142 P.3d 777, 792 (Mont. 2006).  A superseding intervening cause is "an unforeseeable event that occurs after the defendant's original act of negligence which will generally serve to cut off defendant's liability." *Id.*  An event is "unforeseeable" if it is "one that the defendant might reasonably foresee as probable or one that the defendant might reasonably anticipate under the circumstances." *Id.* at 793.  In order to break the causal chain, the unforeseeable event must "occur[] after a defendant's negligent act." *Eddy*, 459 P.3d at 877.

In affirmative defenses six, seven, and eleven, it appears that BNSF attempts to shift liability to an unnamed third-party, which would constitute an impermissible empty chair defense.  Alternatively, the Court may read affirmative defenses six, seven, eleven, and fifteen together as an argument that there is some third-party superseding intervening cause that would break

20

the casual chain, thus relieving BNSF from liability.  Nonetheless, BNSF has insufficiently pleaded a superseding intervening cause.

"The key to determining the sufficiency of pleading an affirmative defense is whether it gives the plaintiff fair notice of the defense." *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); *see also Brown v. Ehlert*, 841 P.2d 510, 514 (Mont. 1992) (explaining that "the same principles of fairness and notice which require a plaintiff to set forth the basis of the claim require a defendant to shoulder a corresponding duty to set out not merely general denials as appropriate, but also those specific defenses not raised by general denials by which a defendant seeks to avoid liability, rather than merely to controvert plaintiff's factual allegations").  Here, BNSF has failed to provide Plaintiff with fair notice:  BNSF has not identified particular facts or entities pertaining to its defense, rendering it impossible for Plaintiff to address the argument.

Moreover, to the extent BNSF may intend to argue that the actions of W.R. Grace are a superseding intervening cause, the Montana Supreme Court has specifically rejected this argument.  *Eddy*, 459 P.3d at 877 (holding that "the Asbestos Court did not err in finding that [W.R.] Grace's actions were not a superseding intervening cause with regards to BNSF's liability here, and BNSF cannot use evidence of Grace's conduct to refute causation under

21

*Faulconbridge*").  For these reasons, BNSF's superseding intervening cause defense fails.

Accordingly, the Court grants Plaintiff's motion for partial summary judgment as to BNSF's non-party affirmative defenses and strikes affirmative defenses six, seven, eleven, fourteen, and fifteen (Doc. 28 at 7–8, ¶¶ 6, 7, 11, 14, and 15).

## IV.   Various Other Affirmative Defenses

Plaintiff also moves for summary judgment as to BNSF's first, third, fourth, and fifth affirmative defenses.  (Doc. 60 at 2.)  These are the affirmative defenses for failure to state a claim; statute of limitations, statute of repose, and/or doctrines of waiver, latches, or estoppel; prior release; and failure to mitigate damages. (Doc. 28 at 6, ¶¶ 1, 3–5.)  BNSF responds that these affirmative defenses were asserted "for purposes of preservation" but concedes that it no longer intends to use these defenses.  (Doc. 68 at 1.)  Accordingly, the Court will grant Plaintiff's motion for summary judgment and strike BNSF's first, third, fourth, and fifth affirmative defenses.

CONCLUSION

Accordingly, IT IS ORDERED that BNSF's motions for summary judgment and partial summary judgment (Docs. 33, 38, 42) are DENIED.

IT IS FURTHER ORDERED that Plaintiff's cross-motion for summary

judgment as to preemption (Doc. 53) is GRANTED.  BNSF's affirmative defense

number twelve, (Doc. 28 at 7, ¶ 12), is stricken.

IT IS FURTHER ORDERED that Plaintiff's cross-motion for partial

summary judgment as to strict liability (Doc. 48) is GRANTED in part and

DENIED in part.  BNSF is collaterally estopped from arguing that its handling of

asbestos in Libby did not constitute an abnormally dangerous activity.  The Court

declines to determine the scope of the common carrier exception with regard to

BNSF's activities in Libby, Montana.

IT IS FURTHER ORDERED that Plaintiff's cross-motion for partial

summary judgment as to BNSF's non-party affirmative defenses (Doc. 55) is

GRANTED.  Mont. Code Ann. § 27-1-703 is enforceable and applicable in this

matter.  BNSF may not apportion fault to non-settled, non-party W.R. Grace, nor

the settled parties Robinson Insulation or the State of Montana.  BNSF's

affirmative defenses numbers six, seven, eleven, fourteen, and fifteen (Doc. 28 at

7–8, ¶¶ 6, 7, 11, 14, and 15) are stricken.

IT IS FURTHER ORDERED that Plaintiff's motion for summary judgment

as to various other affirmative defenses (Doc. 60) is GRANTED.  BNSF's first,

third, fourth, and fifth affirmative defenses (Doc. 28 at 6, ¶¶ 1, 3–5) are stricken.

IT IS FURTHER ORDERED that trial in this matter is RESET for May 6,

2024, at 9:00 a.m. at the Russel Smith Federal Courthouse in Missoula, Montana.

IT IS FURTHER ORDERED that associated trial deadlines are RESET as follows:

| | |
|---|---|
| Attorney Conference to Prepare<br>Final Pretrial Order: | week of April 15, 2024 |
| E-file Final Pretrial Order,<br>Proposed Jury Instructions,<br>Proposed Voir Dire Questions,<br>and Trial Briefs and e-mail<br>to dlc_propord@mtd.uscourts.gov<br>(Trial Briefs are optional): | April 25, 2024 |
| Notice to Court Reporter of<br>Intent to Use Real-Time: | April 25, 2024 |
| Notice to I.T. Supervisor of<br>Intent to Use CD-ROM or<br>Videoconferencing: | April 25, 2024 |
| Final Pretrial Conference: | May 2, 2024, at 2:30 p.m. |

The Court's previous scheduling order (Doc. 15) otherwise remains in full force and effect.

DATED this 16th day of November, 2023.

Dana L. Christensen, District Judge
United States District Court