IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

|  |  |
|---|---|
| EDWARD GALLEGOS, as Personal Representative of the Estate of MARY DIANA MOE, Deceased, | CV 22–68–M–DLC |
| Plaintiff, | ORDER |
| vs. | |
| BNSF RAILWAY COMPANY, a Delaware corporation, | |
| Defendant. | |

Defendant BNSF Railway Company ("BNSF") has filed Combined Motions in Limine.  (Doc. 77.)  Plaintiff has also filed Case-Specific Motions in Limine (Doc. 78), Non-Case-Specific Motions in Limine (Doc. 80), and a Motion in Limine to Exclude Certain Testimony of Dr. Michael Van Scoy-Mosher (Doc. 82).

## FACTUAL BACKGROUND[1]

Decedent, Mary Diana Moe, moved to Libby, Montana, in 1978.  Ms. Moe resided in Libby until her death on December 22, 2022.  Ms. Moe's listed cause of death is mesothelioma caused by exposure to asbestos.  Plaintiff, Edward Gallegos,

---

[1] These facts are derived from the undisputed facts of the parties and those facts which the Court deems to be substantively undisputed.  For a more detailed discussion on the history of vermiculite mining in Libby, Montana, *see BNSF Ry. Co. v. Eddy*, 459 P.3d 857 (Mont. 2020).

is the duly appointed personal representative of the estate of Mary Diana Moe.

W.R. Grace operated vermiculite mines near Libby from 1963 until 1990.

BNSF operated a railyard in downtown Libby that shipped processed vermiculite

ore for W.R. Grace.  Vermiculite ore contains high concentrations of amphibole

asbestos.  As a result of the vermiculite mining and transport operations there is

significant asbestos contamination in and around Libby.

## PROCEDURAL BACKGROUND

The First Amended Complaint alleges that BNSF negligently exposed

Decedent to asbestos by:

> A. Failing to properly inspect for unsafe conditions related to asbestos and asbestos contaminated vermiculite;
> B. Failing to correct unsafe conditions relating to asbestos and asbestos contaminated vermiculite;
> C. Failing to warn of the hazards associated with exposure to asbestos and asbestos contaminated vermiculite;
> D. Failing to provide proper safeguards against exposure to asbestos and asbestos contaminated vermiculite;
> E. Failing to prevent the release of an abnormally dangerous substance within its control;
> F. Failing to exclude members of the public from its property containing hazardous substances;
> G. Failing to conform its activities in Lincoln County to applicable statutes (e.g. § 50-78-101, MCA, et seq., and 29 U.S.C. Ch. 15) and regulations; and
> H. Failing to conform its activities to its own plans, rules and standards.

(*Id.* ¶ 19.)  Plaintiff further alleges that that BNSF is strictly liable for its

abnormally dangerous activities.  (*Id.* ¶ 24.)  Plaintiff seeks compensatory and

punitive damages, including damages for wrongful death. (*Id.* at 10–12.) BNSF

denies the allegations and has asserted numerous affirmative defenses. (*See* Doc.

28.) The Court already addressed the parties' motions for summary judgment, (*see*

Doc. 98), and will now address the parties' various motions in limine.

LEGAL STANDARD

A motion in limine is a "procedural mechanism" through which questions

regarding the admissibility of "testimony or evidence in a particular area" may be

resolved before trial. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).

Such in limine rulings are preliminary, and the Court "may always change [its]

mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3

(2000). "Evidence shall be excluded in limine only when it is shown that the

evidence is inadmissible on all potential grounds. Unless evidence meets this high

standard, evidentiary rulings should be deferred until trial so that questions of

foundation, relevancy and potential prejudice may be resolved in proper context."

*Speaks v. Mazda Motor Corp.*, 118 F. Supp. 3d 1212, 1217 (D. Mont. 2015)

(internal quotation marks and citation omitted). Furthermore, a party seeking to

exclude evidence should "identify the evidence at issue and state with specificity

why such evidence is inadmissible," rather than seeking to "exclude broad

categories of evidence." *Ducheneaux v. Lower Yellowstone Rural Elec. Ass'n,*

*Inc.*, No. CV 19–6–BLG–TJC, 2021 WL 2109190, at *1 (D. Mont. May 25, 2021).

3

DISCUSSION

## I.   BNSF's Combined Motions in Limine

BNSF seeks to exclude testimony, evidence, or arguments related to:

### 1.   Lay witness testimony regarding the asbestos content of products.

Ruling: RESERVE.  Lay witnesses may testify in the form of an opinion that is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.

### 2.   Evidence or references to alleged ban on asbestos.

Ruling: RESERVE.  BNSF seeks to exclude "evidence of the Environmental Protection Agency ('EPA') hearings on asbestos, the testimony presented at the EPA hearings and the EPA's alleged 'ban' of products containing asbestos" on the grounds that "[s]uch references are inaccurate and irreparably prejudicial," as well as irrelevant.  (Doc. 83 at 8.)  BNSF has not provided a specific description of the hearings or testimony it believes will be at issue.

### 3.   Evidence of other vermiculite exfoliation industrial activities around the country.

Ruling: RESERVE.  BNSF "anticipates Plaintiff may attempt to admit testimony and evidence of other industrial exfoliation operations across the

4

country," and seeks to exclude such evidence on the basis that it is irrelevant and unfairly prejudicial.  (Doc. 83 at 9.)  Plaintiff does not dispute BNSF's request "to the extent these operations are unrelated to operations or activities involving vermiculite sourced from Libby."  (Doc. 89 at 11.)  However, Plaintiff does contend that the fact "the Libby mine produced eighty percent of the world's supply of vermiculite—all of which was transported out of Libby by railcar . . . is relevant and probative to demonstrate the extent and severity of Plaintiff's exposures via the contaminated downtown Libby railyard."  (*Id.*)  Plaintiff also points out that "much of the literature and research regarding the entrainment, dispersion, toxicity, and disease-causing potential of Libby vermiculite and Libby Amphibole Asbestos comes from studies of industrial exfoliation facilities around the country."  (*Id.*)  Again, BNSF has failed to identify specific evidence it seeks to exclude; the Court will rule on the admissibility of each activity, individually, at the time of trial.

> **4.    Non-party claims or diseases and statistical evidence of non-party illnesses.**

Ruling: RESERVE.  BNSF moves to exclude evidence of "separate and distinct claims against BNSF, or claims allegedly due to asbestos exposure in Libby, Montana."  (Doc. 83 at 9.)  BNSF also seeks to exclude "statistical evidence of non-parties' alleged asbestos-related illnesses or diseases in the Libby area" on the basis that it is irrelevant and misleading.  (*Id.* at 11.)  The Court agrees with

BNSF that the existence of independent claims and evidence that non-parties suffered some asbestos-related diseases is likely irrelevant and more prejudicial than probative. However, to the extent Plaintiff's experts rely on such data to support their opinions, this use is appropriate. Fed. R. Evid. 703. Whether such information may be disclosed to the jury depends on if its probative value outweighs its prejudicial effect. *Id.* Such information may also be relevant in considering an award of punitive damages. *Merrick v. Paul Revere Life Ins. Co.*, 500 F.3d 1007, 1016–17 (9th Cir. 2007) ("Evidence of actual harm to nonparties can help to show that the conduct that harmed the plaintiff also posed a substantial risk of harm to the general public, and so was particularly reprehensible."). Accordingly, the Court reserves ruling until trial, where the Court will address the admissibility of each claim or instance Plaintiff seeks to introduce.

5.    **BNSF not calling certain witnesses.**

Ruling: RESERVE. BNSF seeks to exclude evidence that "BNSF had the ability to call certain witnesses but failed to do so" and "argument by Plaintiff implying what uncalled witnesses may or may not have said." (Doc. 83 at 13.) BNSF has failed to identify specific potential uncalled witnesses. The Court reserves ruling until trial.

### 6.   Subsequent remedial measures.

Ruling: RESERVE.  BNSF seeks to exclude evidence related to the
remediation of BNSF's property in Libby and any EPA involvement on the
grounds that it is irrelevant and unfairly prejudicial.  (*Id.* at 17–18.)  Fed. R. Evid.
407 excludes evidence of subsequent remedial measures if offered to prove
negligence, culpable conduct, defect, or need for a warning.  However, Rule 407
only applies to voluntary actions, *Pau v. Yosemite Park & Curry Co.*, 928 F.2d
880, 888 (9th Cir. 1991), and is limited to "the actual remedial measures
themselves and not the initial steps toward ascertaining whether any remedial
measures are called for," *In re Aircrash in Bali*, 871 F.2d 812, 816 n.2 (9th Cir.
1989).  BNSF contends that its remediation efforts were voluntarily undertaken
pursuant to its Administrative Order on Consent ("AOC") with the EPA.  (Doc. 94
at 9–10; *see also* Doc. 89-2.)

The Court agrees with Plaintiff that BNSF's remediation efforts undertaken
pursuant to the AOC fall outside the scope of Rule 407 because BNSF's decision
to enter into the AOC was not entirely voluntary.  The AOC was entered into only
after the EPA took action to address BNSF's liability under the Comprehensive
Environmental Response, Compensation, and Recovery Act ("CERCLA").
Moreover, Plaintiff has proffered that this evidence may be relevant for purposes
of impeachment.  (Doc. 89 at 18–19.)  Nonetheless, the Court reserves ruling until

trial when questions of foundation, relevance, and potential prejudice may be resolved in proper context.

### 7.   Inadmissible testing documents.

Ruling: RESERVE.  BNSF seeks to exclude air sampling data from 1975 purportedly conducted by W.R. Grace as well as the EPA's 2003 Initial Pollution Report for lack of foundation, hearsay, prejudice, and irrelevance.  (Doc. 83 at 19–20.)  Plaintiff responds that BNSF waived any objects as to authenticity by failing to object to the documents within thirty days of production.  (Doc. 89 at 21.)  Plaintiff also argues that the documents are excepted from the rule against hearsay as records of regularly conducted business activity (Rule 803(6)), statements in documents affecting an interest in property (Rule 803(15)), statements in ancient documents (Rule 803(16)), and statements against interest (Rule 804(b)(3)).  (*Id.* at 21–22.)  The Court reserves ruling until trial when these issues can be resolved in the proper context.

### 8.   Historical geological documents.

Ruling: RESERVE.  BNSF seeks to exclude "historical geological documents purporting to show the concentration of asbestos in the vermiculite ore mined by W.R. Grace."  (Doc. 83 at 21.)  BNSF argues that "Plaintiff has no evidence that BNSF was aware of these documents or was told by Grace of the dangers of vermiculite concentrate."  (Doc. 83 at 15.)  Plaintiff responds that it

8

intends to introduce documents that speak to the toxicity of the Libby vermiculite and BNSF's knowledge of the asbestos contained in Libby vermiculite. (Doc. 89 at 24.) Plaintiff references a 1959 study on the Kootenai-Flathead Area released by the Montana Bureau of Mines and Geology. (Doc. 89-7.) In its reply brief, BNSF identifies two geologic studies on the greater Kootenai-Flathead Area released in 1960 and 1970 by the Montana Bureau of Mines and Geology. (Doc. 94 at 12.)

The parties appear to be talking past each other on this issue. Because BNSF did not identify the specific studies it seeks to exclude until its reply brief, Plaintiff did not have the opportunity to address them directly. Nor does BNSF directly address the 1959 study raised by Plaintiff. Therefore, the Court is unable to rule on the admissibility of the evidence at this time.

### 9.    Golden rule or reptile theory.

Ruling: GRANTED. Montana state courts have previously stated this type of argument is inadmissible because "it encourages jurors to exercise personal bias rather than objectivity and neutrality based on the evidence presented." *Lemm v. Goyins*, No. ADV-2004-43, 2005 Mont. Dist. LEXIS 1424, at *3 (1st Jud. Dist. Ct. Mont. Nov. 9, 2005); *see also Patch v. Hillerich & Brasby Co.*, No. CDV-2006-397, 2008 Mont. Dist. LEXIS 116, at *13–15 (1st Jud. Dist. Ct. Mont. Mar. 31, 2008). This Court has reached the same conclusion. *See Eriksen v. Wal-Mart*

*Stores, Inc.*, No. CV 14-155-BLG-SPW, 2017 WL 1497870, at *2 (D. Mont. Apr. 25, 2017); *Teague v. Remington Arms Co., LLC*, No. CV 18-184-M-DLC, 2022 WL 17103236, at *15 (D. Mont. Nov. 22, 2022).

### 10.   Equal time at trial.

Ruling: GRANTED in part, DENIED in part.  BNSF seeks to exclude argument that Plaintiff was "disadvantaged by not having enough time to prove his case." (Doc. 83 at 24.)  BNSF further requests that each party be allotted the same amount of time and that the "Court use a clock and deduct from that each party's time spent speaking to or in front of the jury, to ensure that each party has an equal amount of time." (*Id.* at 24–25.)  Plaintiff states he "does not intend on arguing to the jury that he was 'disadvantaged' by the way in which the Court allotted time to prove his case in chief," but argues that the Court should be left to its own discretion in conducting trial.  The Court grants BNSF's motion regarding argument on the prejudice of time constraints.  The Court denies BNSF's other requests.  The Court will not place the parties on a "clock" during trial.

### 11.   Requiring the exclusion of witnesses

Ruling: GRANTED.  Pursuant to Fed. R. Evid. 615, witnesses will be excluded from the courtroom so that they cannot hear other witnesses' testimony, except that Plaintiff and BNSF's representative may be present in the courtroom

throughout the trial, non-party witnesses may observe voir dire and/or opening

statements, and witnesses may observe trial after testifying.

### 12.   Past or future lost earnings or earning capacity.

Ruling: GRANTED.  Plaintiff does not object.  (Doc. 89 at 31.)

## II.   Plaintiff's Case-Specific Motions in Limine

Plaintiff seeks to exclude testimony, evidence, or arguments related to:

### 1.   Blaming third parties, including W.R. Grace, or attempting to apportion causation amongst unnamed third-parties or attribute cause to the same without expert evidence.

Ruling: GRANTED.  Per the Court's previous Order addressing the parties'

motions for summary judgment (Doc. 98): Mont. Code Ann. § 27-1-703 is

enforceable and applicable in this matter; BNSF may not apportion fault to non-

settled, non-party W.R. Grace, nor the settled parties Robinson Insulation or the

State of Montana; and BNSF may not argue that W.R. Grace or any unnamed

third-party acted as a superseding intervening cause of the alleged injuries.

### 2.   Good deeds or acts carried out by BNSF.

Ruling: GRANTED in part, DENIED in part.  Plaintiff seeks to prohibit

BNSF from arguing or suggesting that BNSF is "'good' (including statements such

that BNSF is a 'good neighbor,' 'good corporate citizen,' 'innocent actor,'

'necessary employer,' or 'employs a lot of people') or a benevolent company that

benefits the Libby community, society, and donates to worthy causes."  (Doc. 79 at

8.)  Plaintiff also moves to prohibit BNSF from arguing or commenting on BNSF's parent company(ies) or ultimate owner.  (*Id.*)  Plaintiff argues this evidence is both irrelevant and inadmissible character evidence.  (*Id.* at 9.)  BNSF concedes that evidence of ownership is irrelevant but argues that evidence of its operations, including its focus on safety and industry standards are relevant.  (Doc. 90 at 11.) The Court will exclude evidence and argument that BNSF is a "good" company and regarding BNSF's ownership but will allow BNSF to present evidence regarding its operations, industry standards, and practices that are relevant to the question of negligence.

> **3.   Alleged knowledge possessed by union leaders regarding asbestos at the W.R. Grace mine, and/or hazards of asbestos exposure.**

Ruling: RESERVE.  Plaintiff seeks to exclude evidence "of alleged knowledge of union leaders regarding the presence of asbestos at the W.R. Grace mine" on the grounds that it is inadmissible to show Ms. Moe's knowledge.  (Doc. 79 at 10.)  However, Plaintiff only speculates that any such evidence exists, and the Court is unable to determine the admissibility of such speculative evidence at this time.

> **4.   The CARD Clinic, its finances, any alleged relationship with Plaintiff's counsel, and BNSF's litigation against CARD or the conduct at issue in this litigation.**

Ruling: RESERVE.  Plaintiff seeks to exclude such evidence on the grounds

that it is irrelevant and prejudicial.  (Doc. 79 at 11–14.)  BNSF provides evidence that, on at least one occasion, Ms. Moe was seen at the CARD clinic, and that the "information she gained at the CARD clinic was fundamental to her subsequent treatment with other providers and was a basis for the conclusions of Plaintiff's expert Dr. John Maddox."  (Doc. 90 at 13; *see also* Docs. 90-1, 90-3, 90-4.) Plaintiff responds that CARD did not diagnose or treat Ms. Moe's mesothelioma and contests BNSF's statements that her diagnosing physician or Plaintiff's expert significantly relied on CARD's assessment.  (Doc. 97 at 12.)  However, the Court notes that Plaintiff's own expert considered Plaintiff's visits to the CARD clinic. (*See* Doc. 22-1.)   Nevertheless, the Court is skeptical that CARD's finances, its relationship with Plaintiff's counsel, or BNSF's previous litigation against CARD in this Court will prove to be relevant to the issues in this case.  The Court reserves ruling until trial when relevance and foundation may be properly established.

### 5.    Questioning or criticizing the necessity and/or reasonableness of medical care provided to Ms. Moe by her treating providers.

Ruling: RESERVE.  Plaintiff's argument relies on the principle of tort law that where a "negligent actor is liable for another's bodily injury, he is also subject to liability for any additional bodily harm resulting from normal efforts of third persons in rendering aid which the other's injury reasonably requires, irrespective of whether such acts are done in a proper or negligent matter."  Restatement (Second) of Torts, § 457 (1965); *see also Callihan v. Burlington N. Inc.*, 654 P.2d

972, 977 (1982).  Plaintiff points out that "BNSF did not disclose any opinions that
Mrs. Moe's treating providers have done anything wrong, let alone committed
negligence or malpractice, in their treatment of Mrs. Moe." (Doc. 79 at 14–15.)
BNSF opposes the motion on the grounds that the request is overbroad and
premature.  (Doc. 90 at 16.)  BNSF also contends that it is not precluded from
criticizing the reasonableness, necessity, or Ms. Moe's compliance with the
treatment she received for any conditions prior to and separate from her alleged
mesothelioma.  (*Id.*)  The Court reserves ruling until a determination can be made
in the proper context; however, the Court notes that the subjects identified here
most likely require expert testimony.

## III.   Plaintiff's Non-Case-Specific Motions in Limine

Plaintiff seeks to exclude testimony, evidence, or arguments related to:

### 1.   The parties' attorney fee arrangements and payment and amount of litigation expenses.

Ruling: GRANTED.  BNSF generally does not oppose the motion.  (Doc. 92
at 1–2.)  However, the Court will permit evidence regarding expert witness fee
arrangements, previous work for either party, or similar evidence consistent with
the Federal Rules of Evidence.

2.   **The circumstances under which the parties selected or hired their respective counsel.**

Ruling: GRANTED.  BNSF does not oppose this motion.  (*Id.* at 2.)

3.   **Whether counsel generally represents plaintiffs or defendants and the type of law generally practiced by counsel.**

Ruling: GRANTED.  BNSF generally does not oppose the motion.  (*Id.* at 2–3.)  The Court will permit both parties to inquire during voir dire into whether any of the prospective jurors know anything about the attorneys or their law firms.

4.   **The financial status of counsel and/or their law firms.**

Ruling: GRANTED.  BNSF does not oppose the motion.  (*Id.* at 3.)

5.   **Reference to accommodations, or means of transportation, of counsel, the parties, or witnesses.**

Ruling: GRANTED.  BNSF generally does not oppose the motion except with respect to possible witness impeachment.  (*Id.*)  The Court's ruling as to expert witness fee arrangements and previous work for either party provides sufficient room for impeachment.

6.   **Any suggestion or indication that a judgment in this matter will have adverse effects on BNSF's finances or ability to compete in the marketplace.**

Ruling: GRANTED.  This evidence is not relevant to the issues in this case. Fed. R. Evid. 401.

7.   **Discussion of collateral sources.**

Ruling: GRANTED.  Plaintiff seeks to exclude any evidence of collateral

sources—e.g., health insurance or life insurance—pursuant to Mont. Code Ann. §

27-1-308(3) (2019) and Montana common law.  (Doc. 81 at 9–10.)  BNSF

responds that "the Montana legislature eliminated the collateral source rule related

to damages for reasonable and necessary medical services and treatment through

amendments to § 27-1-308 in 2021."  (Doc. 92 at 4.)  As BNSF correctly points

out: "[w]hile the previous version of § 27-1-308(3) required a jury to determine its

award without consideration of collateral sources, the current version of § 27-1-

308 requires the jury to consider some evidence of collateral source benefits."  (*Id.*

at 4 (emphasis omitted); *Compare* Mont. Code Ann. § 27-1-308(3) (2019) *with*

Mont. Code Ann. § 27-1-308(3) (2021).  However, Plaintiff contends that Ms.

Moe's claim accrued prior to the amendments taking effect, and therefore the

previous version of § 27-1-308 applies in this case.  (Doc. 96 at 8.)

The 2021 amendments to § 27-1-308 only apply to claims that accrue on or

after April 30, 2021.  S.B. 251, 2021 Leg., 67th Sess. (Mont. 2021), 2021 Mont.

Laws 327.  "[A] claim or cause of action accrues when all elements of the claim or

cause exist or have occurred, the right to maintain an action on the claim or cause

is complete, and a court or other agency is authorized to accept jurisdiction of the

action."  Mont. Code Ann. § 27-2-102(a) (2023); *see also O'Connor v. Nat'l Union

Fire Ins. Co.*, 87 P.3d 454, 456 (Mont. 2004) (same).   Ms. Moe was diagnosed

with mesothelioma in September 2020, and at that time her claims for negligence

and strict liability against BNSF under Montana tort law accrued.  Accordingly, Plaintiff is correct to apply the earlier version of § 27-1-308 that prohibits consideration of collateral sources.

### 8.   Use of deposition testimony altering the appearance of what was displayed at the deposition.

Ruling: DENIED.  The Court will not permit either party to use misleading or unfair tactics when presenting evidence to the jury.  However, the Court is not convinced that "it would be fundamentally unfair to enlarge, underline, highlight, or otherwise emphasize for the first time at trial documents that had been presented in deposition without emphasis and without providing the witness and opposing counsel advance notice."  (Doc. 81 at 11.)  Such emphasis may be appropriate to aid the jury in following the evidence presented during trial.  Focusing the jury's attention on specific, relevant information in a document is not necessarily misleading.  Plaintiff may renew its motion during trial should it find that certain methods of emphasis are more misleading than beneficial.

### 9.   Reference to the filing and contents of the parties' motions in limine.

Ruling: GRANTED.  BNSF does not oppose the motion.  (Doc. 92 at 6.)

### 10.   Suggestion that an award of punitive damages is unconstitutional or illegal.

Ruling: GRANTED.  The Court will instruct the jury on the law.  Whether punitive damages may be awarded is a question of law and therefore BNSF may

not argue whether an award of punitive damages is unconstitutional or illegal in front of the jury.

## IV.   Plaintiff's Motion in Limine to Exclude Certain Testimony of Dr. Michael Van Scoy-Mosher

Plaintiff's final motion in limine seeks to exclude certain testimony of BNSF's expert oncologist, Dr. Michael Van Scoy-Mosher on the grounds that he is not qualified to offer certain opinions and that he opines on certain irrelevant topics.  (*See* Docs. 83, 84.)

Dr. Michael Van Scoy-Mosher is an expert oncologist retained by BNSF to opine on Ms. Moe's cancer diagnosis and treatment "from a clinician's perspective."  (Doc. 84-2 at 2.)  He opined that "[i]t is far more likely than not that [Ms. Moe's] cancer was an adenocarcinoma of the lung, and not pleural mesothelioma."  (*Id.* at 3.)  He also offered his opinion, both in his report and during his deposition, regarding insurance coverage and FDA approval of the "CancerTYPE ID" test ordered by Ms. Moe's treating oncologist.  (Docs. 84-1 at 41, 84-2 at 3.)  In reaching his conclusions, Dr. Van Scoy-Mosher referenced Ms. Moe's breast cancer diagnosis at the age of 22, stating that it is "highly unusual at that age, but bears no real relevance to the issues in the case."  (Doc. 84-2 at 4.)  Yet, he goes on to state that her earlier breast cancer diagnosis would "suggest some unknown genetic tendency to develop cancer."  (*Id.*)  He also opined that a "definitive diagnosis [of mesothelioma] could probably only have been determined

18

by a limited autopsy."  (*Id.*)

First, Plaintiff challenges Dr. Van Scoy-Mosher's qualifications to opine on Ms. Moe's pathology and also argues that he unreliably applied his methodology for doing so.  (Doc. 84 at 3.)  Plaintiff argues that Dr. Van-Scoy Mosher is not qualified to opine on whether Ms. Moe had mesothelioma because he is not a pathologist.  (*Id.* at 4.)  Plaintiff also takes issue with Dr. Van Scoy-Mosher's opinion regarding the necessity of an autopsy.  (*Id.* at 5.)

Fed. R. Evid. 702 provides that a qualified witness may offer an expert opinion only if:

> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) The testimony is based on sufficient facts or data;
> (c) The testimony is the product of reliable principles and methods; and
> (d) The expert has reliably applied the principles and methods to the facts of the case.

"There 'is no mechanical checklist for measuring whether an expert is qualified to offer opinion evidence in a particular field;'" instead, "the court must determine whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, and whether the opinion will help the trier of fact." *Trujillo v. Cnty. of Los Angeles*, 751 F. App'x 968, 972 (9th Cir. 2018) (quoting *Santos v. Posadas De P.R. Assocs., Inc.*, 452 F.3d 59, 63 (1st Cir. 2006)).

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* provides a framework for

determining the reliability of an expert witness's methodology.  509 U.S. 579

(1993).  The following factors are relevant to the *Daubert* analysis: "(1) whether a

theory or technique can be tested; (2) whether it has been subjected to peer review

and publication; (3) the known or potential error rate of the theory or technique;

and (4) whether the theory or technique enjoys general acceptance within the

relevant scientific community."  *Id.* at 592–94.  In making a *Daubert*

determination, the Court is to act as "a gatekeeper, not a factfinder" and should

"avoid excluding opinions 'merely because they are impeachable.'"  *Speaks*, 118

F. Supp. 3d at 1218 (citation omitted).

 To the extent Dr. Van Scoy-Mosher has offered his opinion as an oncologist

as to what his clinical diagnosis of Ms. Moe would have been given the evidence

in this case, his opinion is admissible under the Federal Rules of Evidence.  His

opinion is derived, in part, from the pathological analysis of pathologist Dr. Castro-

Silva, not his own pathological analysis.  Issues regarding the correctness of an

expert's opinion go to the weight of the testimony, rather than its admissibility, and

are best addressed through cross-examination and counter evidence.  *Messick v.*

*Novartis Pharms. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014).  Plaintiff may

challenge Dr. Van Scoy-Mosher's opinion on whether Ms. Moe had mesothelioma

through cross-examination and its own expert witness testimony.  However, the

Court agrees that Dr. Van Scoy-Mosher may not offer testimony on whether an

autopsy would be necessary for a "definitive diagnosis" of mesothelioma.  This opinion is beyond his expertise as an oncologist and therefore should not be introduced at trial.[2]

Next, Plaintiff seeks to exclude Dr. Van Scoy-Mosher's opinions regarding insurance coverage or FDA approval of CancerTYPE ID testing on the grounds that it is irrelevant and outside the scope of his expertise.  (Doc. 84 at 7.)  BNSF responds that these opinions are relevant to BNSF's primary defense that Ms. Moe's CancerTYPE ID diagnosis is unreliable and insufficient to prove the alleged mesothelioma diagnosis.  (Doc. 91 at 12.)  The Court agrees the opinion is relevant for this reason.

BNSF also contends that "Dr. Van Scoy-Mosher has a sufficient basis to offer this testimony because he has personally observed insurance companies not reimbursing for diagnosis from CancerTYPE ID as a medical doctor." (*Id.* at 12.) Dr. Van Scoy-Mosher's opinion as to FDA approval of the CancerTYPE ID test also comes from his personal knowledge.  (*Id.*)  The Court again agrees with BNSF.  An expert is permitted to offer opinions "on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. However, Dr. Van Scoy-Mosher may not testify as to information outside of his

---

[2] For further discussion on this issue, see the Court's Order denying BNSF's Motion for Spoliation Sanctions (Doc. 100).

personal knowledge.

Finally, Plaintiff seeks to exclude testimony as to Ms. Moe's medical history of breast cancer at 22 because, by Dr. Van Scoy-Mosher's own admission, it is irrelevant.  (Doc. 84 at 9.)  BNSF responds that it is the Court's role to determine relevance, not an expert witness's.  Again, Dr. Van Scoy-Mosher offers his opinion as a medical professional with relevant experience and knowledge.  Moreover, Plaintiff's own expert witness, Dr. John Coulter Maddox, references Ms. Moe's breast cancer in his own expert report.  (*See* Doc. 22-1 at 9–10.)  Plaintiff's argument is more appropriately raised through cross-examination or testimony from its own expert witnesses.  The Court also notes that Dr. Van-Scoy Mosher's testimony on this, and all subjects, will be limited to the information contained in his expert report, as is the case for all expert witnesses.

## CONCLUSION

Accordingly, IT IS ORDERED that BNSF's Combined Motions in Limine (Doc. 77) are GRANTED in part, DENIED in part, and the Court RESERVES ruling on the remaining matters.  The parties may not introduce evidence or argument regarding the golden rule or reptile theory, the prejudicial effect of time constraints at trial, or past or future lost earnings or earning capacity.  The Court will not place the parties on a "clock" during trial.  Pursuant to Fed. R. Evid. 615, witnesses will be excluded from the courtroom so that they cannot hear other

witnesses' testimony, except that Plaintiff and BNSF's representative may be present in the courtroom throughout the trial, non-party witnesses may observe voir dire and/or opening statements, and witnesses may observe trial after testifying.

IT IS FURTHER ORDERED that Plaintiff's Case-Specific Motions in Limine (Doc. 78) are GRANTED in part, DENIED in part, and the Court RESERVES ruling on the remaining matters.  Per the Court's previous Order addressing the parties' motions for summary judgment (Doc. 98): Mont. Code Ann. § 27-1-703 is enforceable and applicable in this matter; BNSF may not apportion fault to non-settled, non-party W.R. Grace, nor the settled parties Robinson Insulation or the State of Montana; and BNSF may not argue that W.R. Grace or any unnamed third-party acted as a superseding intervening cause of the alleged injuries.  BNSF may not introduce evidence or argument that BNSF is a "good company" or regarding its ownership.  BNSF may present evidence and argument regarding its operations, industry standards, and practices that are relevant to the question of negligence.

IT IS FURTHER ORDERED that Plaintiff's Non-Case-Specific Motions in Limine (Doc. 80) are GRANTED in part and DENIED in part.  The parties may not introduce evidence or argument regarding attorney fee arrangements or payment and amount of litigation expenses; the circumstances under which the

parties selected or hired their respective counsel, whether counsel generally represents plaintiffs or defendants and the type of law generally practiced by counsel; the financial status of counsel and/or their law firms; accommodations, or means of transportation, of counsel, the parties, or witnesses; any suggestion or indication that a judgment in this matter will have adverse effect on BNSF's finances or ability to compete in the marketplace; collateral sources; the filing and contents of the parties' motions in limine; or any suggestion that an award of punitive damages is unconstitutional or illegal.  The Court will not prohibit the parties from using technological tools to highlight or emphasize relevant portions of evidence, so long as the method used does not mislead the jury.  The Court will permit both parties to inquire during voir dire into whether any of the prospective jurors know anything about the attorneys or their law firms.  The Court will permit evidence regarding expert witness fee arrangements, previous work for either party, or similar evidence consistent with the Federal Rules of Evidence.

IT IS FURTHER ORDERED that Plaintiff's Motion in Limine to Exclude Certain Testimony of Dr. Michael Van Scoy-Mosher (Doc. 82) is GRANTED in part and DENIED in part.  Dr. Van Scoy-Mosher will not be permitted to offer testimony regarding whether an autopsy was necessary in order to obtain a "definitive diagnosis" of mesothelioma.

IT IS FURTHER ORDERED that where the parties seek to introduce

24

evidence on which the Court has reserved ruling, counsel shall advise the Court of the proposed evidence before it is introduced.  Counsel shall raise these issues outside the presence of the jury either before or after trial each day or during a break in trial.

DATED this 27th day of November, 2023.

Dana L. Christensen, District Judge
United States District Court