IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| EDWARD GALLEGOS, as Personal Representative of the Estate of MARY DIANA MOE, Deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, a Delaware corporation,<br><br>Defendant. | CV 22–68–M–DLC<br><br>ORDER |

Before the Court is Defendant BNSF Railway Company's ("BNSF") Motion for Spoliation Sanctions. (Doc. 45.) For the reasons discussed below, the Court finds that sanctions are not warranted.

## BACKGROUND

BNSF contests the legitimacy of Ms. Moe's mesothelioma diagnosis and her cause of death. (Doc. 46 at 4–5.) During the course of discovery, BNSF made at least one written request for the preservation of Ms. Moe's relevant organ tissue—lungs, lymph nodes, and any and all organs contained in her thorax—should she pass away during the pendency of this matter. (*Id.* at 6; *see also* Doc. 21-1.) This request was made on September 16, 2022, approximately three months before Ms.

1

Moe passed. (Doc. 21-1.)

BNSF represents that Ms. Moe did not respond to this request until December 20, 2022, when she objected on religious and privacy grounds. (Doc. 46 at 6; *see also* Doc. 21-2.) At the same time, counsel for Ms. Moe also informed BNSF that Ms. Moe was in the hospital and in poor health. (Doc. 46 at 6; *see also* Doc. 21-2.) The following day, December 21, BNSF informed Ms. Moe's counsel of its intent to file an emergency Rule 35 motion with this Court to preserve tissue samples and asked Ms. Moe's counsel to preserve Ms. Moe's remains should she pass before the Court ruled on the motion. (Doc. 46 at 6.)

Ms. Moe passed the following day, December 22, 2022. BNSF, unaware of Ms. Moe's passing, filed its Rule 35 motion on December 23, 2022. (Doc. 19.) BNSF later learned of Ms. Moe's passing through an internet search at the beginning of January 2023. (Doc. 46 at 7.) BNSF then contacted Ms. Moe's counsel and again requested that Ms. Moe's remains be preserved until resolution of the pending Rule 35 motion. (*Id.*; *see also* Doc. 46-4.) However, Ms. Moe's remains had already been cremated. (*See* Doc. 22 at 4.)

BNSF's Rule 35 motion requested that the Court order a limited autopsy in order to obtain tissue samples from Ms. Moe's right lung, left lung, pleural lining, chest wall, and cardiac muscle. (Doc. 20 at 6.) In support of the motion, BNSF argued that the tissue samples were "to allow BNSF to conclusively identify

2

Plaintiff's type of cancer and conduct a tissue digestion and fiber burden analysis . . . [and] to determine whether any other comorbidities, such as a reoccurrence of her breast cancer, caused or contributed to Plaintiff's death." (*Id.* at 3.) BNSF explained that, although "Plaintiff has previously had two tissue samples biopsied from her tumor, most of the tissue samples from those biopsies have been exhausted by Plaintiff's providers and experts. Only two unstained slides and three stained slides have been made available to BNSF." (*Id.* at 3.) BNSF represented that its expert was unable to conduct the necessary analysis using only those two unstained slides. (*Id.*; *see also* Doc. 21-14.)

BNSF withdrew its Rule 35 motion after learning that Ms. Moe's remains had been cremated. (Doc. 23.) BNSF now moves for sanctions against Plaintiff for spoliating evidence by cremating Ms. Moe's remains without preserving tissue samples. (Doc. 45.) As a result, BNSF complains that it is now unable to have an expert evaluate Ms. Moe's cancer and cause of death. (Doc. 46 at 8.) BNSF requests that the Court, based on its inherent power to sanction parties, "(1) instruct the jury that Plaintiff cremated Ms. Moe's remains before BNSF could examine tissue from her relevant organs and (2) give an adverse inference jury instruction instructing the jury it should infer the destroyed tissue would have been harmful to Plaintiff's case." (*Id.* at 11.) Plaintiff responds that BNSF lacked sufficient grounds for the requested tissue samples, the request is contrary to law, and

sanctions are not appropriate. (*See* Doc. 62.)

## LEGAL STANDARD

Spoliation sanctions are a remedy for the intentional or negligent destruction of evidence that would be unfavorable to the responsible party. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). The Court may impose sanctions for the spoliation of evidence under its inherent power to control litigation. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). However, sanctions may only be imposed if "a party knew, or reasonably should have known, that the spoliated evidence was potentially relevant to a claim." *Peschel v. City of Missoula*, 664 F. Supp. 2d 1137, 1141 (D. Mont. 2009). The party moving for sanctions bears the burden of proof. *See Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). Generally, three types of sanctions exist for the spoliation of evidence: (1) dismissal of the claim of the party who is responsible for the spoliation; (2) the exclusion of evidence or witness testimony corresponding to the evidence destroyed; or (3) an adverse jury instruction. *Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 499–500 (E.D. Cal. 2010) (citing various opinions by the Ninth Circuit, Seventh Circuit, and United States Supreme Court).

## DISCUSSION

Plaintiff does not dispute that Ms. Moe's physical condition is in controversy in this matter or that Plaintiff was on notice of BNSF's request for

tissue samples. However, Plaintiff contends that BNSF was not entitled to the requested discovery pursuant to Rule 35 and therefore sanctions are not warranted. (Doc. 62 at 6, 13.) In other words, Plaintiff argues that BNSF did not suffer any actual prejudice. The Court agrees that it is illogical to impose sanctions for spoliation of evidence to which BNSF was not entitled. Thus, the Court must determine whether BNSF was entitled to obtain tissue samples from Ms. Moe.

The Court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." Fed. R. Civ. P. 35(a)(1). The moving party must demonstrate good cause for the examination and "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. P. 35(a)(2). There is some precedent for BNSF's request for an autopsy pursuant to Rule 35 and in those cases the courts required that the movant "show that '(1) the decedent's physical condition is in controversy and (2) that an autopsy is the most medically reasonable method, considering the reasonable medical alternatives, for determining the decedent's physical condition at death." *Jack v. Asbestos Corp. Ltd.*, No. C17-0537JLR, 2017 WL 4838397, at *2 (W.D. Wash. Oct. 23, 2017) (quoting *Belkow v. Celotex Corp.*, No. 89 C 3049, 1989 WL 56976, at *2 (N.D. Ill. May 22, 1989)).

First, Plaintiff contends that by the time BNSF filed its Rule 35 motion, Ms.

5

Moe was already deceased and thus, the requested relief was impossible.  (Doc. 62 at 6.)  The Court is not convinced by Plaintiff's argument.  Plaintiff was first put on notice of BNSF's request in September 2022, when BNSF sent its initial letter requesting the tissue samples.  Ms. Moe waited approximately three months to deny the request and BNSF responded the next day notifying BNSF that it intended to file a Rule 35 motion and requesting that the tissue be preserved should Ms. Moe pass.  Plaintiff had notice ahead of the filing of the Rule 35 motion that BNSF was seeking to discover Ms. Moe's tissue samples and, therefore, cannot now argue that the impossibility of providing those samples—i.e., the result of spoliation—prohibits spoliation sanctions.

Next, Plaintiff contends that Montana law prohibits BNSF's request.  (*Id.* at 8.)  Again, the Court disagrees with Plaintiff.  Plaintiff cites to Article II, § 10 of the Montana Constitution, which provides the fundamental right to privacy.  Indeed, the right to privacy is well protected under the Montana Constitution and the Montana Supreme Court has recognized that this right provides significant protections regarding medical examinations and procedures.  *See Armstrong v. State*, 989 P.2d 364, 380 (Mont. 1999); *see also Simms v. Mont. Eighteenth Jud. Dist. Ct.*, 68 P.3d 678, 683 (Mont. 2003) (stating that "a compelled medical exam is the most intrusive and, therefore, the most limited discovery tool").  However, the Montana Supreme Court has also recognized that Rule 35's requirements

adequately protect the right to privacy. *See Simms*, 68 P.3d at 683 ("[P]rivacy concerns . . . are recognized in [Rule 35], and it is well accepted that a party does not possess an absolute right to obtain an independent medical examination. Rather, the moving party must demonstrate that the adverse party has placed his or her physical or mental condition at issue and that there is 'good cause' for the examination.") Thus, the Court is satisfied that Rule 35 provides sufficient protections for Ms. Moe's right to privacy.

      Finally, Plaintiff argues that BNSF lacked good cause to warrant an autopsy and failed to demonstrate that an autopsy was the most medically reasonable method. (Doc. 62 at 10.) The Court considers these arguments together and finds that BNSF has failed to establish good cause. The good cause requirement of Rule 35 requires "an affirmative showing by the movant that . . . good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). BNSF's argument is that the requested samples "*could* prove relevant to BNSF's defense." (Doc. 71 at 8.) In support of its Rule 35 motion, BNSF relied on the affidavit of its medical expert, Dr. Van Scoy-Mosher, who declared that the tissue samples already collected from Ms. Moe "would not provide the most definitive, reliable, and comprehensive data available regarding the nature of [Ms. Moe's] disease." (Doc. 21-14 at 2.) Notably, however, Dr. Van Scoy-Mosher is an oncologist, not a pathologist, and did not perform an analysis of the existing

7

tissue samples.

Plaintiff has produced its own expert, Dr. John Coulter Maddox, a pathologist, who disagrees with the assertions made by Dr. Van Scoy-Mosher concerning the need for additional tissue to make a reliable diagnosis and reliable causation determination concerning Ms. Moe's mesothelioma.  (Doc. 22-1 at 2.) Dr. Maddox opined that "there was and is enough pathology material to make a reliable diagnosis of mesothelioma and for another pathologist to confirm or refute her diagnosis of mesothelioma."  (*Id.*)  Dr. Maddox also opined that a lung fiber analysis would not be necessary to make a medically reliable diagnosis in this case and "is not typically used by a pathologist to make or confirm a diagnosis of mesothelioma."  (*Id.* at 3.)

Based on the record before the Court, BNSF failed to meet its burden to show good cause for an autopsy to obtain additional tissue samples. Thus, BNSF was not entitled to the tissue samples it sought under its Rule 35 motion and is not entitled to sanctions for spoliation of evidence.  However, the Court will note that it is very concerned by the way the events leading to this motion unfolded. Plaintiff's counsel had several months to respond to BNSF's request for tissue samples but ignored that request until Ms. Moe was apparently in such dire physical condition that she passed away only two days later.  Plaintiff faults BNSF for not filing its Rule 35 motion earlier, when Plaintiff's failure to timely

communicate drove this delay. Plaintiff then failed to notify BNSF of Ms. Moe's passing. The Court understands that the timeline of events surrounding Ms. Moe's passing and cremation was condensed and complicated by the holidays, but that does not excuse Plaintiff's failure to timely communicate with BNSF on such important matters. The Court will conclude by noting that, had good cause been shown to warrant the tissue samples, sanctions certainly would have been appropriate in this case based on the actions of Plaintiff's counsel.

## Conclusion

Accordingly, IT IS ORDERED that BNSF's Motion for Spoliation Sanctions (Doc. 45) is DENIED.

DATED this 27th day of November, 2023.

_____
Dana L. Christensen, District Judge
United States District Court