IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| EDWARD GALLEGOS, as Personal Representative of the Estate of MARY DIANA MOE, Deceased, | CV 22–68–M–DLC |
| Plaintiff, | |
| vs. | ORDER |
| BNSF RAILWAY COMPANY, a Delaware corporation, | |
| Defendant. | |

Before the Court is Defendant BNSF Railway Company's ("BNSF")

Renewed Motion for Sanction Re: Spoliation of Evidence, (Doc. 102), and Motion

to Bifurcate, (Doc. 108).  For the reasons discussed below, the Court denies the

renewed motion for sanctions and grants in part and denies in part the motion for

bifurcation.

## BACKGROUND[1]

This action is brought on behalf of the estate of Mary Diana Moe against

BNSF for wrongful death allegedly resulting from Ms. Moe's exposure to Libby

---

[1] For a more detailed background, see the Court's Order regarding summary judgment, (Doc. 98), and Order denying spoliation sanctions, (Doc. 100).

amphibole asbestos as a result of BNSF's activities in Libby, Montana.  BNSF contests the legitimacy of Ms. Moe's mesothelioma diagnosis and her cause of death.  (Doc. 46 at 4–5.)

BNSF previously moved for spoliation sanctions stemming from Plaintiff's failure to preserve Ms. Moe's remains after her death.  (Doc. 45.)  In that motion, BNSF requested that the Court "(1) instruct the jury that Plaintiff cremated Ms. Moe's remains before BNSF could examine tissue from her relevant organs and (2) give an adverse inference jury instruction instructing the jury it should infer the destroyed tissue would have been harmful to Plaintiff's case."  (Doc. 46 at 11.) The Court denied BNSF's motion after concluding that BNSF had "failed to meet its burden to show good cause for an autopsy to obtain additional tissue samples." (Doc. 100 at 8.)  In reaching its decision, the Court noted that it was "very concerned by the way the events leading to th[e] motion unfolded" and stated that, "had good cause been shown to warrant the tissue samples, sanctions certainly would have been appropriate in this case based on the actions of Plaintiff's counsel." (*Id.* at 8–9.)  However, the Court did not specify what sanction it would have found appropriate under those hypothetical circumstances.

A jury trial in this matter is scheduled for May 6, 2024.  The deadline for motions in limine concluded on July 24, 2023.  (Doc. 15 at 2.)  BNSF filed its renewed motion for sanctions on March 20, 2024, (Doc. 102), and its motion to

bifurcate on March 22, 2024, (Doc. 108).  Plaintiff opposes both motions.  (Docs. 111, 112.)

DISCUSSION

## I. Renewed Motion for Spoliation Sanctions

BNSF brings its renewed motion "to further explain BNSF's position on the specific issue of why good cause existed under Rule 35 for the limited autopsy of Decedent Mary Moe."  (Doc. 102 at 1.)  BNSF argues that good caused existed because "obtaining tissue samples from Decedent['s] lungs for a tissue digestion analysis was the only medically reasonable method for understanding 1) if her mesothelioma was caused by asbestos exposure and 2) if it was caused by asbestos exposure, what type(s) of asbestos fibers caused her diagnosis."  (Doc. 103 at 10.)  BNSF offers the declaration of Dr. Mark Wick, an undisclosed expert pathologist, as well as several scientific articles in support of its motion.  (Docs. 103-1, 103-2, 103-3, 103-5, 103-6, 103-7).  Dr. Wick opines that "the analysis of asbestos fibers from a tissue sample in this case could have yielded information regarding the abundance of asbestos fibers in the lung tissue, and also the specific fiber type(s)," (*Id.* ¶ 7), but "[t]he destruction of Ms. Moe's tissues by cremation precludes the evaluation needed to establish the causation of her mesothelioma."  (*Id.* ¶ 9.)

Plaintiff responds that BNSF's "renewed" motion is improper under the Federal Rules of Civil Procedure and District of Montana Local Rule Civ. 7.3 and

still fails to meet the good cause standard under Rule 35.  (Doc. 111.)  The Court

agrees that BNSF's motion is procedurally improper.

This Court's local rules require that a party must first seek leave to file a

motion for reconsideration of an interlocutory order and specify how at least one of

the following threshold criteria are met:

> (1) (A) the facts or applicable law are materially different from the facts
> or applicable law that the parties presented to the court before entry of
> the order for which reconsideration is sought, *and*
>
> (B) despite the exercise of reasonable diligence, the party applying for
> reconsideration did not know such fact or law before entry of the order;
> *or*
>
> (2) new material facts arose or a change of law occurred after entry of
> the order.

D. Mont. L.R. Civ. 7.3(a)–(b) (Dec. 1, 2023).  The rule goes on to state that "[n]o

motion for leave to file a motion for reconsideration of an interlocutory order may

repeat any oral or written argument made by the applying party before entry of the

order" and that a "[v]iolation of this restriction subjects the offending party to

appropriate sanctions."  L.R. Civ. 7.3(c).

BNSF argues that its motion is not subject to L.R. 7.3 because the purpose

of the renewed motion is merely "to further explain BNSF's position on the

specific issue of why good cause existed under Rule 35 for the limited autopsy of

Decedent Mary Moe" because BNSF intends to re-raise the adverse inference jury

instruction at trial during the jury instruction conference.  (Doc. 103 at 2.)  In the

Court's view, BNSF makes a distinction without a difference. BNSF's motion clearly asks the Court to reconsider its previous ruling regarding spoliation sanctions, specifically with regard to the imposition of an adverse jury instruction. As such, BNSF is required to adhere to L.R. 7.3, which BNSF has failed to do.

First, BNSF did not request leave to file the renewed motion. Second, BNSF's renewed motion fails to present a valid basis for reconsideration. BNSF does not identify any new facts or applicable law that arose *after entry* of the Court's order denying spoliation sanctions. Nor does BNSF explain why the information now provided in its renewed motion could not have been provided in support of its original motion for spoliation sanctions. It is improper for BNSF to try to relitigate this issue based on evidence BNSF could have offered initially. Furthermore, while BNSF was not required to disclose Dr. Wick as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2) because Dr. Wick is not being offered to testify at trial, the Court is nonetheless concerned by the inequity of allowing BNSF to rely on an undisclosed expert introduced after the Court has already decided the issue on which the expert is being offered. This exemplifies the need for L.R. 7.3's safeguards.

Because BNSF's renewed motion improperly seeks reconsideration of an interlocutory order of the Court without complying with L.R. 7.3, the Court denies BNSF's renewed motion. However, the Court's denial of BNSF's request to give

an adverse jury instruction does not prohibit argument or evidence regarding the basis for Ms. Moe's diagnosis and whether the diagnosis was "definitive"—issues that both Plaintiff's expert, Dr. Maddox, and BNSF's expert, Dr. Van Scoy-Mosher, opine on in their expert reports.

### II. Motion to Bifurcate

BNSF moves to bifurcate trial into two separate proceedings: the first stage relating to BNSF's liability for negligence and any amount of compensatory damages and the second stage relating to liability for punitive damages and any amount of punitive damages. (Doc. 108 at 1.) BNSF argues that bifurcation in this manner would help to avoid unnecessary prejudice against BNSF. (Doc. 109 at 5.) Plaintiff takes the position that limited bifurcation is appropriate but offers an alternative approach: in the first stage, the jury would decide liability for both negligence and punitive damages, as well as any amount of compensatory damages, and in the second stage, the jury would determine what amount of punitive damages is appropriate, if any. (Doc. 112 at 2.) Plaintiff argues that this approach is consistent with customary practices, is appropriate given the nature of the claims against BNSF, and sufficiently avoids undue prejudice against BNSF. (*Id.*) The Court agrees with Plaintiff's proposed model of bifurcation.

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." Fed.

R. Civ. P. 42(b).  Bifurcation under Rule 42 is discretionary and the burden is on the moving party to demonstrate that bifurcation is warranted.  *See, e.g.*, *Burton v. Mountain W. Farm Bureau Mut. Ins. Co.*, 214 F.R.D. 598, 612 (D. Mont. 2003); *Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2008 WL 2074401, at *1 (N.D. Cal. May 15, 2008).  Where the evidence "overlaps substantially, the normal procedure is to try compensatory and punitive damage claims together with appropriate instructions to make clear to the jury the difference in the clear and convincing evidence required for the award of punitive damages." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004).

Here, the evidence pertaining to BNSF's liability for negligence overlaps substantially with the evidence pertaining to BNSF's liability for punitive damages.  Plaintiff's theories of negligence include "BNSF's failure to inspect and correct for unsafe conditions, failure to warn of hazards, failure to prevent the release of dangerous substances, and failure to conform its activities to its own plans, rules, and standards."  (Doc. 112 at 5.)  These theories implicate BNSF's knowledge and the actions BNSF took in light of that knowledge.  The same evidence is relevant in proving whether BNSF acted with actual malice or fraud, as required to prove liability for punitive damages.  Mont. Code Ann. § 27-1-221 (2023).

BNSF speculates as to what evidence may be offered at trial to prove

liability for punitive damages and argues that this evidence is not relevant to BNSF's liability for negligence.  (Doc. 114 at 3–4.)  However, the Court does not have sufficient information at this time to determine whether this speculative evidence, provided out of context, would be relevant to the issue of negligence in this case.  To the extent any evidence does arise at trial that proves irrelevant to Plaintiff's negligence claim, the Court can address any objections to its introduction at that time.  The approach proposed by Plaintiff is also consistent with this Court's previous decisions in similar cases.  *See, e.g.*, *Frost v. BNSF Ry. Co.*, 218 F. Supp. 3d 1122, 1131 (D. Mont. 2016) (denying BNSF's motion to bifurcate because "the evidence supporting BNSF's liability and potential award of punitive damages is essentially the same"); *Wells v. BNSF Ry. Co.*, Case No. CV-21-97-GF-BMM (D. Mont. March 19, 2024) (ruling from the bench that the Court would bifurcate the issue of liability from the issue of any amount of punitive damages).

Accordingly, the Court grants BNSF's motion in part and denies it in part. Trial will be bifurcated in the manner suggested by Plaintiff.

### CONCLUSION

Accordingly, IT IS ORDERED that BNSF's Renewed Motion for Sanction Re: Spoliation of Evidence (Doc. 102) is DENIED.

IT IS FURTHER ORDERED that BNSF's Motion to Bifurcate (Doc. 108) is

GRANTED in part and DENIED in part.  Trial will be bifurcated into two stages.
In the first stage, the jury will determine BNSF's liability for negligence and
punitive damages, as well as the amount of any compensatory damages.  If BNSF
is found liable for punitive damages, the jury will then proceed to a second stage of
trial regarding the amount of the punitive damages award.

DATED this 23rd day of April, 2024.

Dana L. Christensen, District Judge
United States District Court

9