Chad M. Knight
Anthony M. Nicastro
Cole Anderson
KNIGHT NICASTRO MACKAY, LLC
1401 Walnut Street, STE 200
Boulder, CO 80302
Phone: (303) 815-5869
Fax: (816) 396-6233
knight@knightnicastro.com
nicastro@knightnicastro.com
anderson@knightnicastro.com
*Attorneys for BNSF Railway Company*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# MISSOULA DIVISION

| EDWARD GALLEGOS, as Personal Representative of the Estate of MARY DIANA MOE, Deceased, <br><br> Plaintiff, <br><br> vs. <br><br> BNSF RAILWAY COMPANY, a Delaware corporation, <br><br> Defendant. | Cause No.: 9:22-cv-00068-DLC <br><br> **DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO STAY PENDING APPEAL IN RELATED ACTION OR ALTERNATIVE MOTION TO CHANGE VENUE DUE TO MEDIA COVERAGE** |
|---|---|

COMES NOW Defendant, BNSF Railway Company ("BNSF"), by and through its counsel of record, Knight Nicastro MacKay, LLC, move this court to *Stay this Action Pending Appeal in a Related Action or the Alternative to Change venue due to Media Coverage*. Counsel for BNSF conferred with Plaintiff regarding the Motion to Stay and Plaintiff opposes the Motion.

*Defendant's Brief in Support of its
Motion to Stay or Alternative Motion to Change Venue*
Page 1

## BRIEF IN SUPPORT

At the start of this litigation, Plaintiff Moe represented to this Court that this lawsuit was related to other state and federal litigation. *See* Doc. 14 at pg. 7. There Plaintiff Moe identified that multiple individuals have filed claims against BNSF for its "industrial conduct in Libby, Montana." One such action—*Jackson Wells, et al. vs. BNSF Railway Co.,* et al. 2021-cv-00097-BMM—was recently tried to a jury in the United States District Court for the District of Montana (hereinafter "*Wells/Walder*"). The trial in that matter took 11 days with the Court and jury receiving significant evidence, testimony, and argument. Like the *Wells/Walder* plaintiffs, the Plaintiff in this case advances a legal theory that BNSF is strictly liable for transporting vermiculite from W.R. Grace using the Libby Railyard and argues that the common carrier exception to strict liability, recently adopted by the Montana Supreme Court, should not apply. Alternatively, Plaintiff asserts that BNSF was negligent.

In *Wells/Walder*, the jury determined that BNSF was not negligent but found that BNSF's "handling" of vermiculite containing asbestos fell outside of its common carrier duties and was a substantial factor in causing the plaintiffs' disease. This claim was subject to extensive debate and the Court expressed great skepticism about the validity of this claim throughout the trial.

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 2

> 14  We are now at trial.  It's now time to put up -- or
> 15  shut up.  Based upon what I heard yesterday -- and, again -- I
> 16  haven't heard evidence yet.  But my understanding was initially
> 17  the material was mined at the mine site, transported through
> 18  the railyard, stored at the railyard, and then loaded on
> 19  railcars.  That seems to be erroneous.
> 20       Yesterday, what I saw in the opening statement, which
> 21  is not evidence, was that materials were mined at the mine
> 22  site, trucked down to the processing facility, concentrated,
> 23  loaded on railcars outside of town.  Those cars are then taken
> 24  on the rail -- to the railyard, where they're hooked on east
> 25  and westbound trains whenever they are available.  And they are
>
> 1  sealed at the site as well.
> 2       So I'm not sure what activities you're talking about
> 3  that -- undertaken for BNSF's own purposes that resulted in --
> 4  or caused injuries to the plaintiffs in this case.  So I'll
> 5  wait to hear evidence before I make a ruling on that.  But I
> 6  have serious questions about the viability of your strict
> 7  liability claims.
> 8       MR. LANIER:  Understood.
> 9       THE COURT:  That's my first observation.

See Declaration of Anthony Nicastro, Exhibit A - Transcript of Trial with a Jury Volume III at pgs 321-322. The Court's doubt continued throughout the presentation of Plaintiffs' case.

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 3

```
 7        THE COURT:  So I still have some doubts about the
 8   common carrier exception.  I think we have to take that up at
 9   the conclusion of your case and that will be an issue to
10   address Monday afternoon or Tuesday.  And depending on the
11   outcome there, that either complicates our jury instructions or
12   simplifies the matter dramatically.
13        But, again, I'll try to start focusing in -- I don't
14   want to wait until Thursday or Friday.  I don't want to waste
15   the jury's time haggling over jury instructions and they're
16   waiting to come in here.  So I want to have those finished no
17   later than Thursday morning.  Maybe one or two will have to
18   wait until and see what happens in your case, but most of them
19   should be done before then.
20        MR. LANIER:  Thank you, Your Honor.  We've got all
21   our appellate lawyers working on that, and so you might get a
22   different dose of people arguing to you, but we've got them all
23   here.
```

*See Declaration of Anthony Nicastro, Exhibit B - Transcript of Trial with a Jury Volume VI at pg 1329.*

It is undisputed that Plaintiff asserts identical strict liability claims and purposefully modeled his legal briefs and arguments on the *Wells/Walder* case. Plaintiff's mirroring was particularly prevalent when the parties briefed the strict liability claim in their cross-motions for summary judgment. Attached to the Declaration is copy of the *Brief in Support of Limiting the Common Carrier Exception* filed in *Wells/Walder*. *See Declaration of Anthony Nicastro, Exhibit C Plaintiffs' Brief in Support of Motion of Partial Summary Judgment RE: Limited*

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 4

*Scope of the Common Carrier Defense to BNSF's Abnormally Dangerous Activity*. Plaintiff relies on identical legal arguments and evidence here. *See* Doc. 49.

Additionally, Plaintiff tendered to BNSF an almost identical exhibit list as the *Wells/Walder* plaintiffs, even leaving in place many of the same bates labels that were used in that trial. *Id*. Plaintiff also tendered proposed jury instructions that rely heavily on instructions given in *Wells/Walder*, particularly involving strict liability. *Id.* Finally, Plaintiff tendered deposition designations that covered identical issues involving BNSF's common carrier tasks when hauling product for W.R. Grace. *Id*. It cannot be denied that Plaintiff's theory of alleged activities outside of the common carrier exception implicate the same legal issues raised in *Wells/Walder*, which will be subject to an appeal. *Id*.

Pursuant to the *Landis* factors outlined below and the *CMAX* application of those factors to a similar series of mass litigation, this Court should Stay this matter until the Ninth Circuit has an opportunity to address legal issues of utmost significance to the outcome of this litigation.

Alternatively, BNSF seeks to change venue given the overwhelming media attention that occurred during and after the *Wells/Walder* trial. Media coverage leading up to that trial quoted an attorney as saying that BNSF "has settled some previous lawsuits for undisclosed amounts". *See Declaration of Anthony Nicastro, Exhibit D – News Articles RE Wells-Walder Trial*. In that same paragraph of the

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 5

initial news article on the eve of the *Wells/Walder* trial, the journalist wrote that a second trial against the railroad over the death of a Libby resident is scheduled for May in federal court in Missoula. *Id*.

Lawyers for *Wells/Walder* represented to the Court that they were not the source of that information.

```
 6       MR. LANIER: I might, Your Honor. Mark Lanier for
 7  plaintiffs.
 8       Your Honor, I want the record to be very clear that
 9  no one from the counsel for the plaintiffs in this case are
10  responsible for this, spoke to this article, had anything to do
11  with it.
12       This is a situation where I am certainly acutely
13  aware of the issues about press and a trial. The last case I
14  tried was the opioid trial. Press was all over it. We had
15  reporters -- we had an overflow courtroom with reporters in it.
16       I tried the Vioxx cases where the press was in the
17  courtroom, the hip cases where the press was in the courtroom.
18  Press is an issue that's got to be dealt with very delicately.
19       And at least in Texas, we have a professional
20  responsibility rule that says we are not allowed to try our
21  case in the court, and it's looked at very carefully.
22       I will represent to the Court, I had a conversation
23  with one reporter. It was Geoff Healey with Bloomberg, and I
24  told him, Please do not write on this case, because he was
25  asking me about it.
```

*See Declaration of Anthony Nicastro, Exhibit E - Transcript of Trial with a Jury Volume I at pg. 8*. This initial article began with quoting the husband of a client represented by the Kovacich Snipes Johnson firm, the same firm representing the

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
Page 6

Plaintiff in this matter. This article and others throughout the week outlined issues and arguments that this Court has already ruled inadmissible such as settlement and other individuals making claims for diseases. Additionally, the article discusses inadmissible EPA findings. The verdict returned in *Wells/Walder* was also widely reported, which included statements from plaintiff counsel that BNSF was finally "being held accountable." These and other undoubtably inflammatory articles will prejudice BNSF because the jury will already have been exposed to the incomplete and incorrect information in the article before the case begins. *See Declaration of Anthony Nicastro, Exhibit D – News Articles RE Wells-Walder Trial.*

      The Court in *Wells/Walder* did not continue the trial in part because jurors leading up to the trial were asked to fill out jury questionnaires which instructed them not to read about the case in the paper. In this case, no such protection was given to the jury pool. Media reports of the case were disseminated in the Missoulian and other local outlets, including Montana newspapers and Montana public radio. *Id.*

## LEGAL AUTHORITY

      The power to stay proceedings is inherent in the Court's power to control the disposition of a cause "with economy of time and effort for itself, for counsel and for litigants." *Landis v. North American Co.*, 299 U.S. 248, 254 (1936). The

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 7

proponent for the stay must make a clear case of hardship or inequity if there is even a fair possibility that the stay will damage someone else. The Ninth Circuit has provided more clarification to this standard. Under *Landis*, a district court may grant a stay in the interests of efficiency and fairness when a "pending resolution of independent proceedings … bear[s] on the case." *Leyva v. Certified Grocers of Cal. Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979). The Ninth Circuit has provided the following factors to guide district courts in assessing whether a *Landis* stay is appropriate.

> Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among those competing interests are [1] the possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962)). In *CMAX*, a common carrier by air sued a shipper claiming that it had not paid the full amount of a government approve tariff. *Lockyer*, 398 F.3d at 1110 (describing *CMAX*'s background). Dozens of other lawsuits were filed by the same carrier against other shippers. *Id.* A separate governing body then instituted an administrative proceeding against the carrier and the district court stayed the carrier's lawsuit. *Id.* The carrier, which was the plaintiff, sought mandamus and the Court of Appeals denied. *Id.* The Ninth Circuit

found that the administrative proceeding would develop a comprehensive record by which a very technical issue could be decided by the various district court cases. The *CMAX* panel held:

> To these considerations must be added the fact that several other similar cases are now pending in the same district court, and more are likely to be filed in the near future. In the interests of uniform treatment of like suits there is much to be said for delaying the frontrunner.

*CMAX*, 300 F.2d at 269.

Finally, the Court noted that a delay in litigation to the plaintiff, CMAX would only result, "at worst, in delay in its monetary recovery." *Lockyer*, 398 F.3d at 1110 (describing *CMAX*'s reasoning). That harm was not sufficient to overcome the "considerable assistance" that would be gained by having the common issue to the other suits heard by the agency and applied to the other suits. *Id.*

## ARGUMENT

The *Landis* factors and the *CMAX* case are directly on point to this litigation. Plaintiff is asserting the same legal arguments regarding strict liability that will be subject to the *Wells/Walder* appeal. These legal issues include: (1) whether the plaintiffs' strict liability claim is preempted by the Federal Rail Safety Act or the Hazardous Materials Transportation Act; (2) whether the plaintiffs' strict liability claim is preempted by the Interstate

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
Page 9

Commerce Commission Termination Act; and (3) whether the common carrier exception to strict liability applies to alleged harmful emissions caused by rail yard operations. As to this third issue, the Court in *Wells/Walder* relied heavily upon a district court opinion released only months ago that involved a Rule 12 Motion to Dismiss. *In re E. Palestine Train Derailment*, 2024 U.S. Dist. LEXIS 43837, 2024 WL 1096064 (N.D. Ohio, March 13, 2024). The Ninth Circuit will resolve this issue as a matter of first impression.

    Plaintiff would not be damaged by a stay while the Ninth Circuit Court of Appeals addresses legal issues that directly impact the viability of Plaintiff's strict liability claim. *CMAX* shows that a delay in monetary recovery is not sufficient to overcome to benefit to the parties and the Court system in staying these proceedings.

    The second factor also weighs in favor of a stay. The Court in *Wells/Walder* struggled mightily with the common carrier exception. *See Declaration of Anthony Nicastro* Exhibit B Volume VI trial transcript at pg. 1329). The Court directly challenged the plaintiffs in that case as to how BNSF could even be strictly liable for "inaction" when case law supporting strict liability required "action." *See Declaration of Anthony Nicastro, Exhibit F Trial Transcript VII* at pg 1534-1536.The Court additionally struggled with how to instruct the jury with both sides

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
Page 10

tendering competing jury instructions and verdict forms, neither of which was accepted by the Court. The case concluded then both sides objecting to the Court's instruction to the jury on this issue. *See Declaration of Anthony Nicastro Exhibit G BNSF's Objections to the Court's Jury Instruction Number 15 and Exhibit H Plaintiffs' Objections to the Court's jury instructions.*

The Court's instruction on strict liability instructed the jury that BNSF is liable for handling asbestos in its railyard outside of its statutory duty. The error created in instructing on this issue causes hardship and inequity to BNSF in this action because it forces BNSF to defend a negligence claim at the same time as the Court will undoubtedly instruct the jury that BNSF "is liable."  BNSF is entitled to have the negligence claim stand on its own merits and be judged by a jury who is not told that BNSF is already liable for a claim that is subject to a legal conclusion yet to be decided by any Federal Court of Appeals.

Finally, the third *Landis* factor is easily met. Resolving the scope of the common carrier exception will streamline this litigation. District courts in the Ninth Circuit "typically stay cases when the outcome of another proceeding will have preclusive effect on the pending issues." *Flores v. Bennett*, 675 F. Supp. 1052, 1063 (E.D. Cal. 2023); *see also Safari Club Int'l v. Bonta*, 2023 WL 3505373, at *1 (E.D. Cal. May 17, 2023) (granting stay where the interlocutory appeal of the court's denial of a preliminary injunction "contained all of the

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 11

substantive legal issues in dispute in this litigation"); *Andrade Rico v. Beard*, 2019 WL 7940684, at **5, 8 (C.D. Cal. Aug. 1, 2019) (staying proceedings pending interlocutory appeal where the merits of plaintiffs' claims were intertwined with the questions of qualified immunity on appeal because a grant of qualified immunity would result in dismissal of the claims); *Grisham v. Phillip Morris, Inc.*, 670 F. Supp. 2d 1014, 1030 (C.D. Cal. 2009) (noting that a stay pending appeal would be appropriate to "avoid wast[ing] everybody's time if the Court grants Plaintiff's motion only to have the underlying preclusive decisions be overturned on appeal.")

The Ninth Circuit's ruling on the scope of the common carrier exception will bear directly on the issues and questions of law in this litigation and promote judicial economy. *Accord Flores*, 675 F. Supp. at 1063–64. Not only would clarity on the common carrier exception narrow the scope of issues in this litigation, it could also resolve the entire case. In cases in which strict liability is upheld, plaintiffs dismiss negligence claims as they are redundant. One such example is *Covey v. Brishka*, 2019 MT 164, 396 Mont. 362, 445 P.3d 785. There the trial court heard evidence at trial, granted a directed verdict on strict liability for abnormally dangerous activity and the plaintiff dismissed the negligence claim. *Id*. at ¶12. On the other hand, if the common carrier exception applied or the Court should not have found BNSF strictly liable for the acts alleged in the first place,

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
Page 12

the evidence and more importantly instructions to the jury are easily settled for the remaining negligence claim. Simply put, a resolution of the strict liability issue and the common carrier exception on appeal in the *Wells/Walder* case for either side in that litigation, narrows and streamlines the issues for litigation in this case.

Additionally, this case as well as the *Wells/Walder* case have been strategically advanced by the plaintiff firms due to the disease at issue. There are hundreds of cases filed by both plaintiff firms and some filed as far back as 2014. Those cases have remained dormant by their counsel purposefully and strategically so that newer cases could be advanced. The older cases not advanced include living claimants as opposed to personal representatives. If Plaintiff's opposition to this motion argues prejudice in justice delay, the Court should also consider as part of that factor the strategic timing with which plaintiffs have advanced this case. A plaintiff's rush to the courthouse before other litigants who do not have the same alleged disease severity (or even a disease at all) is not a compelling reason for a just resolution to a claim. BNSF can represent to this Court that now that *Wells/Walder* has been tried and the strict liability and common carrier exception has been litigated to a full record, it will seek to stay all other similar cases except for one. The *Barnes* case pending in Montana State Court (Lincoln County) was the case subject to the Montana Supreme Court opinions of *BNSF Ry. Co. v. Asbestos Claims Court*, 2020 MT 59. That opinion was relied on by both this

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
Page 13

Court and the *Wells/Walder* court in denying BNSF's *Motion for Summary Judgment* in which the courts relied on collateral estoppel. The *Barnes* case, though, was never litigated to a final judgment because the Montana Supreme Court reversed and remanded. BNSF is seeking to have the Barnes record fully litigated because it believes the courts are improperly relying on that decision as a basis for finding strict liability.

## LEGAL AUTHORITY FOR A MOTION TO CHANGE VENUE

"A trial court may grant a motion for change of venue if the record demonstrates either presumed prejudice in the community or actual prejudice in jurors. *Mine O'Mine, Inc. v. Calmese*, 2010 U.S. Dist. LEXIS 70263, at *3-4 (D. Nev. 2010) (citing *Harris v. Pulley*, 885 F.2d 1354, 1361 (9th Cir. 1989)). Prejudice is presumed when the record demonstrates that the community where the trial was held was "saturated" with prejudicial and inflammatory media publicity about the case. *Harris*, 885 F.2d at 1361. "Under such circumstances, it is not necessary to demonstrate actual bias." *Id.*; *see also Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S. Ct. 1507, 16 L. Ed. 2d 600 (1966) (holding that where there is a reasonable likelihood that pre-trial news coverage will prevent a fair trial, a trial judge can either transfer or continue the case). A transfer becomes necessary when prejudicial news coverage or an "inflamed community atmosphere" forecloses the possibility of sitting an impartial jury. *Harris*, 885 F.2d at 1361; *See Chavers v. Miller-Stout*, 2006

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 14

U.S. Dist. LEXIS 78383, at *7 (E.D. Wash. 2006) ("Regarding prejudice caused by media coverage, Plaintiff must show a reasonable likelihood that inflammatory publicity immediately before trial warrants a change of venue."); *Gotbaum v. City of Phoenix*, 617 F. Supp. 2d 878, 882 (D. Ariz. 2008) ("To overcome the presumption that jury pool members are impartial, the movant "must show saturating and inflammatory press coverage that would reach virtually all members of the jury pool and lead a court to conclude that the pool as a whole has been adversely influenced.").

The Court in *Wells/Walder* could not find that there was over saturation of the news story leading up to the trial and reasoned that the jury pool was already instructed not to read about the case involving BNSF and asbestos weeks before arriving to jury service. None of those factors exist in this case. News reports that included inadmissible evidence existed over the last two weeks and continue to be published in online news feeds even today. The Court also did not hold the plaintiffs in *Wells/Walder* responsible for trying the case in the media because they represented to the Court that they were not the source for information. However, the law firm representing the Plaintiff in this case is connected to the individual offered to the media for an interview and now the Plaintiff seeks to capitalize on the media reports. The Court should change venue or at a bare minimum continue the trial until media coverage of the *Wells/Walder* case is no longer so prevalent.

*Defendant's Brief in Support of its*
*Motion to Stay or Alternative Motion to Change Venue*
 Page 15

DATED this 25th day of April, 2024.

                KNIGHT NICASTRO MACKAY, LLC

                By: /s/ *Anthony M. Nicastro*
                    Anthony M. Nicastro
                    Chad M. Knight
                    Cole Anderson
                    *Attorneys for Defendant BNSF Railway Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Mark M. Kovacich<br>Ross T. Johnson<br>Caelan G. Brady<br>KOVACICH SNIPES JOHNSON, P.C.<br>P.O. Box 2325<br>Great Falls, MT 59403<br>(406) 461-5595<br>mark@justicemt.com<br>ross@justicemt.com<br>caelan@justicemt.com<br>*Attorneys for Plaintiff* | |
| Nathan D. Finch<br>MOTLEY RICE, LLC<br>401 9th Street NW, Suite 630<br>Washington, DC 20004<br>(202) 849-4968<br>nfinch@motleyrice.com<br>*Attorney for Plaintiff* | Roger M. Young, Jr. (*Pro Hac Vice*)<br>MOTLEY RICE, LLC<br>28 Bridgeside Blvd.<br>Mt. Pleasant, SC 29464<br>(843) 216-9091<br>Fax: (843) 216-9450<br>hyoung@motleyrice.com<br>*Attorney for Plaintiff* |

KNIGHT NICASTRO MACKAY, LLC

By: /s/*Anthony Nicastro*
      Anthony Nicastro

*Certificate of Service*
Page 17