**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| EDWARD GALLEGOS, as Personal Representative for the Estate of MARY DIANA MOE, Deceased, | CV-22-68-BMM |
| Plaintiff, | |
| v. | **ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS** |
| BNSF RAILWAY CO., a Delaware corporation, | |
| Defendants. | |

**INTRODUCTION**

Plaintiff Edward Gallegos, as personal representative for the estate of Mary Diana Moe ("Plaintiff"), sued Burlington Northern Santa Fe Railway Company ("BNSF") on April 1, 2022, for wrongful death allegedly resulting from Moe's exposure to amphibole asbestos related to BNSF's activities in Libby, Montana. (Doc. 1.) BNSF filed a motion for judgment on the pleadings on March 12, 2026. (Doc. 145.) Plaintiff separately asks the Court to certify to the Montana Supreme Court the question of Montana common law about whether the common carrier

1

doctrine protects BNSF from strict liability in handling asbestos. (Doc. 150.) The Court held a hearing on April 20, 2026. (Doc. 157.)

## HISTORY

Decedent Mary Diana Moe ("Moe"), moved to Libby, Montana, in 1978. (Doc. 98 at 2.) Moe resided in Libby until her death on December 22, 2022. (*Id*.) Moe's cause of death is listed as mesothelioma caused by exposure to asbestos. (*Id*.) Plaintiff serves as the duly appointed personal representative of the estate of Moe. (*Id*.)

W.R. Grace operated vermiculite mines near Libby from 1963 until 1990. (*Id*.) BNSF operated a railyard in downtown Libby that shipped processed vermiculite ore for W.R. Grace. (*Id*.) Vermiculite ore contains high concentrations of amphibole asbestos. (*Id*.) Significant asbestos contamination in and around Libby occurred during the vermiculite mining and transport operations. (*Id*.)

Moe originally filed a complaint on April 1, 2022, alleging that BNSF's operations in Libby, Montana, caused Moe's mesothelioma. (Doc. 1.) Moe alleged claims for negligence and strict liability. (*Id*. at 4-9.) Plaintiff filed the First Amended Complaint January 20, 2023, following Moe's death. (Doc. 27.) Plaintiff seeks compensatory and punitive damages, including damages for wrongful death. (*Id*. at 10-12.)

The Court stayed this case pending the outcome in the similar case *Wells & Walder. v. BNSF*, Case 4:21-cv-00097-BMM (D. Mont.) ("*Wells*"). *Wells* represented the first Libby-related asbestos case brought by a community member to go to trial. The Court conducted a 10-day jury trial in *Wells* from April 8, 2024, to April 19, 2024. *See Wells*, at Doc. 388. The jury returned a verdict that found BNSF to be strictly liable for the abnormally dangerous activity of transporting vermiculite that caused the mesothelioma and deaths of the two plaintiffs, Tom Wells and Joyce Walder. *Id*. at Doc. 389. The jury awarded $4,000,000 in compensatory damages to each plaintiff. *Id*. The jury also concluded that the plaintiffs had failed to prove that BNSF had been negligent in its operations. *Id*. BNSF appealed the judgment on August 5, 2024. *Id*. at Doc. 436.

The Ninth Circuit reversed on February 24, 2026. The Ninth Circuit remanded with instructions to enter judgment for BNSF. *Wells v. BNSF Ry. Co.*, 168 F.4th 574 (9th Cir. 2026) ("*Wells/Walder* opinion"). The Ninth Circuit determined that the common carrier exception protected BNSF from the plaintiffs' strict liability claims related to the abnormally dangerous activity of BNSF's transportation of vermiculite in and around Libby. *Id*. BNSF filed a motion for judgment on the pleadings in this case on March 12, 2026. (Doc. 145.) BNSF also removed 215 other related cases to federal court that had been filed in Montana state court. *See Barnes v. BNSF*, Case 9:26-cv-53-BMM, at Doc. 1, Doc. 8 Ex. 1 (listing the 215 cases that BNSF removed

to federal court arising from Libby community asbestos exposure). BNSF filed identical motions for judgment on the pleadings in these 215 cases. *Id*. at Doc. 2. The Court consolidated the 215 Libby Asbestos Cases pursuant to the parties' stipulated motion on May 19, 2026. *Id*. at Doc. 20. *Gallegos* remains separate from the consolidated Libby Asbestos Cases.

## LEGAL STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings. The Court applies the same standard to a Rule 12(c) motion as it does to a Rule 12(b)(6) motion. *Clements v. Comprehensive Sec. Servs., Inc.*, No. CV-19-45-BU-BMM, 2020 WL 7249621, 2020 U.S. Dist. LEXIS 217980 (D. Mont. Nov. 5, 2020). Judgment on the pleadings proves appropriate when the moving party establishes that no genuine issues of material fact exist and that they are entitled to judgment as a matter of law. *General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989). The Court must accept as true all allegations of fact by the nonmoving party. *Austad v. United States*, 386 F.2d 147, 149 (9th Cir. 1967).

## DISCUSSION

BNSF argues that the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") preempts both Plaintiff's strict liability claim and negligence claim. (Doc. 146 at 3-4.) BNSF argues that the concurring opinion in *Wells/Walder*

4

correctly concluded that ICCTA precludes any strict liability claims based on BNSF's conduct. (*Id.* at 4.) BNSF asserts that failure to apply ICCTA preclusion would have the effect of "managing and/or governing railroad operations." (*Id.*, quoting *Wells/Walder*, 168 F.4th at 587 (Callahan, J., concurring).) BNSF argues that this conclusion should be extended beyond that reached by the concurring opinion in *Wells/Walder* and additionally preempt Plaintiff's negligence claim. (Doc. 146 at 4.) BNSF asserts that concurring opinion in *Wells/Walder* also implied that the Hazardous Materials Transportation Act ("HMTA") additionally preempts Plaintiff's negligence claim and strict liability claim and requests that the Court adopt that conclusion. (*Id.* at 5.) Finally, BNSF contends that *Wells/Walder* clarifies that BNSF remains protected by the common carrier exception from Plaintiff's strict liability claims. (Doc. 146 at 24.)

Plaintiff asserts that BNSF's motion for judgment on the pleadings proves untimely and improper. (Doc. 147 at 3.) Plaintiff argues either that the Court already has issued decisive orders rejecting BNSF's preemption arguments or that BNSF has waived the arguments. (*Id.* at 4.) Plaintiff asserts that *Wells/Walder* does not mandate dismissal of Plaintiff's negligence claim. (*Id.* at 12.) Plaintiff further contends that he has alleged sufficient facts to defeat dismissal on a Rule 12(c) motion of his strict liability claim and that further factual development at trial proves necessary, even after the *Wells/Walder* opinion. (*Id.* at 17.) The Court will address each issue in turn.

I. **Whether Plaintiff's Strict Liability Claim Fails as a Matter of Law Based on the Conclusion in *Wells/Walder* that the Common Carrier Exception Protects BNSF.**

The Ninth Circuit concluded in *Wells/Walder* that the Court erred when it rejected BNSF's common carrier exception defense to the *Wells/Walder* plaintiffs' strict liability claims. BNSF argues that the Ninth Circuit's conclusion in *Wells/Walder* precludes any argument that the common carrier exception does not apply to the entirety of BNSF's handling of vermiculite in Libby. (Doc. 146 at 26.) BNSF contends that the *Wells/Walder* plaintiffs asserted two theories for why the common carrier exception did not preclude their strict liability claims. (*Id*. at 25-26.)

BNSF alleges that the first theory—that the escaped asbestos was no longer in transit—failed because accumulated vermiculite "arose solely from BNSF's operation as a common carrier executing its federally mandated duty to transport vermiculite." (*Id*., quoting *Wells/Walder*, 168 F.4th at 581.) BNSF argues that the Ninth Circuit made clear in rejecting the plaintiffs' analogies to *Covey v. Brishka*, 445 P.3d 785 (Mont. 2019), and *Town of E. Troy v. Soo Line R. Co.*, 409 F. Supp. 326, 328 (E.D. Wis. 1976), that the "gradual spillage still occurred during BNSF's shipment of vermiculite[,]" which precluded a strict liability claim. (Doc. 146 at 26, quoting *Wells/Walder*, 168 F.4th at 582.) BNSF asserts that the Ninth Circuit similarly conclusively rejected the plaintiffs' second theory—that BNSF's maintenance of its asbestos contaminated railyard was one of the "other activities"

6

referenced as an exception to the common carrier doctrine by the Montana Supreme Court in *BNSF Ry. Co. v. Eddy*, 459 P.3d 857 (Mont. 2020). (Doc. 146 at 26.)

BNSF argues that "Plaintiff's strict liability claim here asserts the same theory of liability." (Doc. 146 at 27.) Plaintiff counters that his complaint includes allegations that meet that standard described by the Ninth Circuit in *Wells/Walder*, as set out in *Eddy*, for activities falling beyond the common carrier exception. (Doc. 147 at 15.) Plaintiff alleges that BNSF pursued the following activities for its own business purposes:

- o "generated, handled, stored, released, discarded, and failed to control asbestos 'as a result of BNSF's business activities,'" (Doc. 27, ¶¶ 11–12); and

- o "engaged in abnormally dangerous activities and created abnormally dangerous conditions on its property 'in the course of its business activities,' including the handling, storing, loading, and use of asbestos and asbestos-contaminated products," (Doc. 27, ¶¶ 22–23).

(Doc. 147 at 15.) Plaintiff argues that these allegations mirror the allegations found sufficient in *Murphy-Fauth v. BNSF Ry. Co.*, No. CV-17-79-GF-BMM-JTJ, 2018 WL 3601235 (D. Mont. July 27, 2018). (Doc. 147 at 15.) The Court remains skeptical that Plaintiff's allegations demonstrate a meaningful distinction from the pleadings asserted by the *Wells/Walder* plaintiffs. *See Wells, et al. v. BNSF*, Case 4:21-cv-00097-BMM, at Doc. 1 ¶¶ 57-58.) The Court additionally remains skeptical that the Ninth Circuit's opinion left open the door for strict liability claims based

purely on BNSF's allegedly poor maintenance of the vermiculite dust that accumulated in its railyard.

The *Wells/Walder* opinion specifically concludes that the common carrier exception shields BNSF from strict liability claims based on conditions that "arose solely from BNSF's operation as a common carrier executing its federally mandated duty to transport vermiculite." 168 F.4th at 581. The Ninth Circuit concludes that a failure to maintain the premises, prevent dust spillage, or otherwise neglect to affirmatively address the accumulation of vermiculite in the Libby railyard falls within the protections of the common carrier exception. *Id*. at 582. The Ninth Circuit did not foreclose, however, any potential strict liability claims against BNSF for its role in the asbestos contamination in Libby. *Wells/Walder* explicitly recognizes the carve-out discussed by the Montana Supreme Court in *Eddy* for "other activities" and "industrial activities." *Id*. at 582, 584.

The Ninth Circuit cites the discussion in *Eddy* concerning allegations that BNSF engaged in the "disturbance of asbestos and collaborat[ed] with W.R. Grace to 'strategize regarding distribution of the product and geologic sampling,' as well as other undertakings 'not required of a common carrier.'" *Id*. at 582. *Wells/Walder* distinguishes between "other activities" "not required of the common carrier" and those conditions that arose "during the course of BNSF's transportation of vermiculite concentrate." *Id*. at 584 (citing *Eddy*, 168 F.4th at 864, n.1, 873). The

Ninth Circuit refrained from closing the door to all potential strict liability claims based on BNSF's alleged "other activities."

The Ninth Circuit additionally appears to leave open a narrow window for plaintiffs to present evidence that BNSF profited, or affirmatively intended to profit, by failing to clean the railyard or maintain the premises. *Wells/Walder*, 168 F.4th at at 582. *Wells/Walder* distinguishes the facts from those in *In re East Palestine Train Derailment*, No. 4:23-cv-0242-BYP, 2024 WL 1096064 (N.D. Ohio Mar. 13, 2024). The Ninth Circuit reasoned that the plaintiffs and the Court cited no evidence that BNSF "aimed to save money by not cleaning its railyard." *Wells/Walder*, 168 F.4th at 583. The Ninth Circuit concluded that the finding that the railroad "voluntarily undertook [the relevant] activities for [its] own purpose" proved crucial to the *East Palestine* decision. *Id.* at 582-83 (quoting *East Palestine*, 2024 WL 1096064, at *11).

The Court determines that the Ninth Circuit's analysis and conclusion in *Wells/Walder* appears to leave open a very narrow door for strict liability claims based on BNSF's actions related to asbestos in Libby so long as the allegations focus on conduct beyond BNSF's common carrier mandated transport of vermiculite. The Court concludes that Plaintiff's allegations prove sufficient at this time, particularly as they concern "generating" "unreasonably dangerous and hazardous asbestos," "using asbestos and asbestos contaminated products," or other allegations related to

9

business activities that may implicate evidence like that discussed in *East Palestine* about profit motives. (*See* Doc. 1 ¶¶ 16, 21, 22, 23.)

Plaintiff further argues that judgment on the pleadings represents the wrong stage at which to dismiss Plaintiff's strict liability claim. Plaintiff contends that "[a] Rule 12(c) ruling would prevent Plaintiff from presenting evidence at trial that BNSF did aim to save money by attempting to avoid remediation." (Doc. 147 at 16.) The Court agrees. The Ninth Circuit decided *Wells/Walder* on a full trial record with significant evidentiary development. The Court emphasizes that the door left open by the *Wells/Walder* opinion proves narrow. It remains plausible that evidence could be presented, however, that would demonstrate that the common carrier exception does not preclude strict liability for all BNSF's undertakings in Libby related to vermiculite. The Court declines to dismiss Plaintiff's strict liability claim on a Rule 12(c) motion.

## II. Whether ICCTA Preempts both Plaintiff's Strict Liability and Negligence Claims.

BNSF relies on the concurring opinion in *Wells/Walder* to argue that ICCTA preempts both Plaintiff's strict liability claim and negligence claim. (Doc. 146 at 6.) BNSF argues that the concurring opinion correctly concluded that Plaintiff's strict liability claim would have "the effect of managing or governing rail transportation" activities that fall within the exclusive jurisdiction of the Surface Transportation

Board. (*Id*. at 6-7.) BNSF asserts that the reasoning in the concurring opinion mandates the same preemptive result against Plaintiff's negligence claim. (*Id*. at 10.)

Plaintiff argues that BNSF waived its ICCTA preemption arguments as it failed to raise the defense before the Court's motions deadline. (Doc. 147 at 5.) Plaintiff argues that BNSF litigated the issue of federal preemption extensively before the motions deadline but never raised ICCTA preemption. (*Id*.) Plaintiff also argues that the non-binding concurring opinion in *Wells/Walder* proves erroneous. (*Id*. at 7.) Plaintiff argues that his claims amount to state law tort claims that only have an incidental effect on rail transportation and are permitted under ICCTA. (*Id*. at 7-8.) Plaintiff asserts that the Court already has rejected the same ICCTA argument in *Wells/Walder* and BNSF has failed to present any new facts specifically demonstrating how Plaintiff's claims have, or could in the future, interfere with rail transportation. (*Id*. at 9-10.) The Court first will address the waiver arguments.

Plaintiff cites *Cohen v. ConAgra Brands, Inc*., 16 F.4th 1283, 1289 (9th Cir. 2021), for the contention that "[p]reemption is an affirmative defense, so the defendant bears the burden of pleading and supporting its preemption argument." (Doc. 147 at 5.) Plaintiff argues that BNSF moved for summary judgment on its preemption affirmative defense but failed to raise the issue of ICCTA preemption in any of its briefing. (*Id*. at 5-6.) BNSF's brief supporting its motion for summary judgment based on preemption argues that "Plaintiff's negligence and strict liability

tort claims under Montana common law are preempted, as a matter of law, by the Hazardous Materials Transportation Act and the Federal Railroad Safety Act." (Doc. 34 at 1.) BNSF repeatedly asserts that HMTA and FRSA preempt Plaintiff's claims but never mentions ICCTA. (*See generally* Doc. 34.) BNSF similarly fails to mention ICCTA in its reply/response to Plaintiff's cross motions. (*See generally* Doc. 69.)

Plaintiff correctly argues that BNSF has the burden of pleading the affirmative defense of federal preemption. *See Cohen*, 16 F.4th at 1289. A defendant typically waives affirmative defenses by failing to raise them. Fed. R. Civ. P. 12(h). The U.S. Supreme Court has "made clear that preemption issues that dictate the choice of forum are jurisdictional and therefore may not be waived, but expressly stated that this rule does not extend to preemption issues that affect the parties' choice of law." *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349 (2d Cir. 2003) (citing *Int'l Longshoremen's Ass'n, AFL-CIO v. Davis*, 476 U.S. 380 (1986)). "The issue is not whether Congress intended to replace state law with a federal regulatory scheme but 'whether jurisdiction provided by state law is itself pre-empted by federal law vesting exclusive jurisdiction over that controversy in another body.'" *Rimrock Chrysler, Inc. v. State*, 375 P.3d 392, 398 (Mont. 2016) (quoting *Davis*, 476 U.S. at 387-88).

ICCTA grants the Surface Transportation Board exclusive jurisdiction over regulation of rail transportation. 49 U.S.C. § 10501(a)). Congress has "designated another forum for the resolution of a certain class of disputes," which differs from federal laws that merely concern "what law a decision maker must apply[.]" *Rimrock*, 375 P.3d at 399 (internal citations omitted). ICCTA therefore "deprives [a] court[] of jurisdiction" where it applies. *Id*. A federal preemption defense that "is in the nature of a challenge to a court's power to adjudicate [] may be raised at any time." *Id*. at 398 (quoting *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1496 (9th Cir.1986) (citing *Davis,* 476 U.S. at 381-82))). BNSF has not waived its ICCTA preemption defense and may raise it at this time.

The Court recognizes that BNSF has violated the Court's scheduling order by only now raising an ICCTA preemption argument. (*See* Doc. 15, Doc. 30.) The Court additionally questions whether collateral estoppel bars BNSF's ICCTA arguments, among its other preemption arguments. The Court declines to address that issue as the parties failed to raise it. The Court also acknowledges that the Ninth Circuit's decision in *Wells/Walder* has introduced new elements, and the Court deems it proper to address those issues. The Court will address BNSF's ICCTA arguments.

The Court first will address BNSF's argument that the Court should adopt the conclusion reached by the concurring opinion in *Wells/Walder* that ICCTA preempts Plaintiff's strict liability claims. The Court already has extensively addressed these

arguments in *Wells/Walder*. *See* Case 4:21-cv-00097-BMM at Doc. 430. The Court concluded that ICCTA did not preclude the plaintiff's strict liability claim because "the accumulation and presence of asbestos and asbestos-contaminated vermiculite in the Libby Railyard does not amount to a physical instrumentality related to the movement of passengers or property." *Id*. at 10. The Court distinguished between the Libby Railyard itself, and the definition of railyard transportation under ICCTA, and the wide-scale and transient nature of the asbestos contamination in Libby. *Id*. The Court addressed the relevant case law and concluded that the asbestos contamination in Libby analogized closely with the drainage ditch in *Emerson v. Kansas City Southern Ry. Co.*, 503 F.3d 1126 (10th Cir. 2007).

BNSF asserts that the Court should consider the concurring opinion in *Wells/Walder* "highly persuasive[.]" (Doc. 153 at 3.) BNSF stretches its own cited authority which notes that a concurring opinion "*may* [be] consider[ed] [] for its persuasive value." (*Id*., quoting *Cervantes-Aguilar v. Barr*, 819 Fed. Appx. 573, 577 (10th Cir. 2020) (emphasis added).) The Court recognizes that concurring opinions may offer persuasive value. The Court finds uncompelling, however, BNSF's assertion that this concurring opinion "offers critical guidance on how the Ninth Circuit would likely rule in this case" when the two other judges on the panel declined to join. (*Id*.) The concurring opinion offers guidance on how that judge likely would rule in this case. The Court has considered the concurring opinion for

any persuasive value but remains persuaded by its previous reasoning and declines to adopt the reasoning of the concurring opinion in *Wells/Walder*.

The concurring opinion in *Wells/Walder* concluded that the plaintiff's strict liability claim would have the effect or regulating rail transportation primarily for the following three reasons: (1) it "would impose several compliance costs;" (2) it "would allow unpredictable and unfair penalties for noncompliance" based on damages; and (3) it "can be expected to increase rates that BNSF and other rail carriers charge customers." 168 F.4th at 587 (Callahan, J., concurring). The concurring opinion addresses three cases that reached similar conclusions. *Id*. at 588 (citing *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1027-31 (9th Cir. 1998), *as amended* (Oct. 20, 1998); *Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1095-98 (9th Cir. 2010); and *Oregon Coast Scenic R.R., LLC v. Oregon Dep't of State Lands*, 841 F.3d 1069, 1076-77 (9th Cir. 2016)).

The concurring opinion fails to acknowledge that ICCTA does not "preempt state or local laws if they are laws of general applicability that do not unreasonably interfere with interstate commerce." *BNSF Ry. Co. v. California Dep't of Tax & Fee Admin.*, 904 F.3d 755, 760 (9th Cir. 2018). The concurring opinion similarly fails to recognize or attempt to distinguish any of the cases that have rejected ICCTA preemption. BNSF's briefing on this issue primarily quotes the concurring opinion in *Wells/Walder* and brings no new analysis to the Court's attention. (Doc. 146 at 7-

15

10.) BNSF more thoroughly addresses the case law in its argument that ICCTA preempts Plaintiff's negligence claim and the Court will consider those arguments here.

The Court sees a clear difference between the cases finding ICCTA preemption and the cases declining to apply preemption. Nearly every parenthetical BNSF provides for a case that found ICCTA preemption relates to the design and/or construction of a railyard/train. (*See* Doc. 146 at 10-13.)  The few that do not specifically discuss design or construction of a railyard/train primarily involved permit requirements or laws that directly regulated how a train operated. (*Id*.) Even *Ass'n of Am. Railroads*, 622 F.3d at 1095-98, regulated airborne emissions by clearly imposing requirements on the railcar and railyard while in operation.

*Guild v. Kansas City Southern Ry. Co.*, 541 Fed. Appx. 362 (5th Cir. 2013), *Emerson*, 502 F.3d, and *Fla. E. Coast Ry. Co. v. City of W. Palm Beach*, 266 F.3d 1324, 1331 (11th Cir. 2001), all recognized the limitations of ICCTA preemption. A law has only an incidental effect where it does not restrict BNSF's use of its property, "prevent[] [it] from constructing, acquiring, operating, abandoning, or discontinuing a line," or otherwise impact the movement of BNSF's passengers or property. (Doc. 430 at 10-13, citing *Suchon v. Wis. Cent., Ltd.*, No. 04-C-0379-C, 2005 U.S. Dist. LEXIS 4343, at *10 (W.D. Wis. Feb. 23, 2005), and *City of Auburn*, 154 F.3d at 1031.)

The Court sees *Emerson* as highly instructive on how to characterize the "the Railroad's disposal of waste and maintenance of the [area]." 502 F.3d at 1130. BNSF argues that ICCTA preemption hinges solely on whether BNSF's handling of vermiculate falls within the definition of transportation. (Doc. 153 at 9.) BNSF argues that *Wells/Walder* concluded that the presence of asbestos in the Libby railyard falls within the broad federal definition of transportation. (*Id*. at 6.) *Wells/Walder* did not expressly state this conclusion but instead noted that "[p]laintiffs' theory of liability *thus stems directly* from BNSF's statutory duty to transport vermiculite concentrate." 168 F.4th at 581 (emphasis added). The Court agrees that Plaintiff's theory here stems from BNSF's transport, but this outcome differs from concluding that all BNSF's actions, and inactions, related to the vermiculite in Libby fall within the definition of transportation for ICCTA preemption. The Court need not address whether BNSF's actions stem from transportation. The Court instead must address whether BNSF's actions fall within the definition of transportation.

*Emerson* concluded that the expansive definition of transportation "does not encompass everything touching on railroads." *Id*. at 1129. *Emerson* instead determined that discarding waste and otherwise failing to maintain property are "acts (or failures to act) [that] are not instrumentalities 'of any kind related to the movement of passengers or property' or 'services related to that movement.' []

17

Rather, they are possibly tortious acts committed by a landowner who happens to be a railroad company." *Id*. BNSF's alleged actions, or alleged failures to act, prove analogous.

*Emerson* also relied upon a Surface Transportation Board opinion that addressed the preemptive scope of ICCTA and concluded that "two broad categories of state and local actions to be preempted regardless of the context or rationale for the action." *Id*. at 1130, (quoting *CSX Transp., Inc.—Petition for Declaratory Order,* 2005 WL 1024490, at *2-*4 (Surface Transp. Bd. May 3, 2005) (citations and footnote omitted)). The first category involves "any form of state or local permitting or preclearance that, by its nature, could be used to deny a railroad the ability to conduct some part of its operations or to proceed with activities that the Board has authorized." *Emerson*, 502 F.3d at 1130 (quoting *CSX Transp.,* 2005 WL 1024490, at *2-*4). The second category includes "state or local regulation of matters directly regulated by the Board—such as the construction, operation, and abandonment of rail lines []; railroad mergers, line acquisitions, and other forms of consolidation []; and railroad rates and service." *Emerson*, 502 F.3d at 1130 (quoting *CSX Transp.,* 2005 WL 1024490, at *2-*4 (internal citations omitted)).

Like *Emerson*, neither of those categories of regulations exist here. *Emerson* further concluded that the case cited by BNSF, *Rushing v. Kansas City Southern Railway Co.,* 194 F.Supp.2d 493 (S.D. Miss. 2001), supported its conclusion as it

distinguished between regulations that attempted to quell noise and vibrations—preempted—and regulations regarding an earthen berm that the railroad had constructed—not preempted. *Emerson*, 502 F.3d at 1131. *Emerson* also reasoned that *City of Auburn* and other cases finding preemption had relied upon findings of express preemption within ICCTA, and the Tenth Circuit saw no such express preemption within any ICCTA provision concerning the "dispos[al] of detritus or maint[enance of area and adjacent property]." *Emerson*, 502 F.3d at 1132.

The incidental financial burden that may fall on BNSF in having to address its decades-long accumulation of asbestos in downtown Libby does not prove unreasonable and does not amount to regulation of a railyard. *See Guild*, 541 Fed. Appx. at 368; *see also BNSF Ry. Co.*, 904 F.3d at 760-61 ("What matters is the degree to which the challenged regulation burdens rail transportation[.]"). This reasoning applies to Plaintiff's strict liability claim and negligence claim. BNSF has identified no relevant distinction between the claims for the purpose of this analysis. The concurring opinion in *Wells/Walder* declined to apply ICCTA preemption to the plaintiffs' negligence claims. 168 F.4th at 586, n.2 (Callahan, J., concurring). The Court agrees. The Court also determines that ICCTA does not preempt Plaintiff's strict liability claim and negligence claim.

III.  **Whether HMTA Preempts both Plaintiff's Strict Liability Claim and Negligence Claim.**

BNSF further argues that HMTA preempts both Plaintiff's negligence claim and strict liability claim. (Doc. 146 at 17.) BNSF fails to acknowledge that the Court already has addressed this issue within these proceedings. (*See generally* Doc. 146 at 17-24.) BNSF also fails to recognize that the Montana Supreme Court already has rejected its HMTA preemption arguments, as has the Court in *Wells/Walder*. *See BNSF Ry. Co. v. Eddy*, 459 P.3d 857 (Mont. 2020); *see Wells/Walder*, Case 4:21-cv-00097-BMM at Doc. 210. BNSF seemingly implies that one sentence found in the concurring opinion in *Wells/Walder* should alter the Court's previous conclusion. (*Id*. at 17.)

BNSF acknowledges that the concurring opinion in *Wells/Walder* expressly declined to address HMTA preemption but argues that the concurring opinion nonetheless demonstrates that HMTA preempts Plaintiff's state law tort claims. (*Id*.) The following statement represents the entire relevant quotation from the concurring opinion in *Wells/Walder*:

> And BNSF would have to implement these onerous compliance measures despite the fact that under HMTA, vermiculite does not qualify as a hazardous material warranting federal regulation of its transportation by rail carriers— even when the vermiculite contains toxic asbestos. *See* 49 U.S.C. § 5101 *et seq.*; 49 C.F.R. § 172.102(c)(1)(156) (stating that "[a]sbestos that is immersed or fixed in a ... mineral ore ... is not subject" to HMTA regulatory requirements). *Plaintiffs' strict liability claims, regardless of whether separately preempted by HMTA, function as regulations akin to those issued under HMTA authority.*

168 F.4th at 587 (Callahan, J., concurring) (emphasis added). The Court remains unpersuaded that it should discard its previous analysis based on this dicta in a concurring opinion. The Court declines to reject binding precedents in favor of a passing remark in a concurring opinion. The Court concludes that HMTA does not preempt Plaintiff's strict liability claim and negligence claim.

## IV.   Whether Certification to the Montana Supreme Court Proves Proper Regarding the Scope of the Common Carrier Exception in Montana.

"The United States Supreme Court has approved the limited use of certified questions to state supreme courts when a federal court case involves an important question of state law which proves both unclear under state legal precedent and would be determinative in the instant case." *Winter v. Pioneer Drilling Servs., Ltd.*, 2015 WL 7756001, at *1-2 (D. Mont. Dec. 1, 2015) (citing *Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393-398 (1988)). The decision to certify questions of state law to a state court "rests in the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

Questions should not be certified to a state supreme court if the answer to a question under state law is "reasonably clear and adequate state law exists to allow a federal court to reach a principled decision." *Riordan v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 11417002, at *4 (D. Mont. Sept. 29, 2008), aff'd, 589 F.3d 999 (9th Cir. 2009), (citing *City of Houston v. Hill*, 482 U.S. 451, 470-71 (1987)).

21

Certification is not required even where state law proves unclear. *Butler v. N. Am. Capacity Ins. Co.*, 2013 WL 12133913, at *2 (D. Mont. Aug. 13, 2013). Further, "mere difficulty in ascertaining local law is no excuse for remitting the parties to a state tribunal for the start of another lawsuit." *Lehman Bros.*, 416 U.S. at 390. A district court is not required to certify if it "believes that it can resolve an issue of state law with available research materials already at hand, and makes the effort to do so." *Id.* at 395.

Plaintiff asks the Court to certify the following question to the Montana Supreme Court:

> Does Montana's common carrier exception to strict liability for an abnormally dangerous activity or condition immunize BNSF from strict liability for harm caused by BNSF's decades long maintenance of a reservoir of airborne asbestos in or on its Libby railyard when this activity was not required by BNSF's statutory duties as a common carrier?

(Doc. 151 at 2.) Plaintiff argues that discrepancies between the Court's and the Ninth Circuit's interpretation of Montana Supreme Court case law "demonstrates the need for clarity from the Montana Supreme Court." (*Id*. at 3.)

Plaintiff argues that this question meets the factors identified by the Ninth Circuit in *Glacier Bear Retreat, LLC v. Dusek*, 107 F.4th 1049 (9th Cir. 2024). These factors include the following: "(1) whether the question presents important public policy ramifications yet unresolved by the state court; (2) whether the issue is new,

22

substantial, and of broad application; (3) the state court's caseload; and (4) the spirit of comity and federalism." *Glacier Bear Retreat*, 107 F.4th at1052-53, (quoting *High Country Paving, Inc. v. United Fire & Cas. Co.*, No. 20-35791, 2021 WL 4343861 (9th Cir. Sept. 24, 2021) (internal citation omitted)). The Court disagrees.

The Court concludes that sufficient Montana authority exists to answer this question without certification to the Montana Supreme Court. The Court agrees that the question involves important public policy ramifications of substantial and broad application. The Court agrees with the Ninth Circuit that the Montana Supreme Court's decision in *Eddy* provides sufficient authority on the question presented. *Wells/Walder*, 168 F.4th at 584.

## ORDER

Accordingly, **IT IS ORDERED** that BNSF's Motion for Judgment on the Pleadings (Doc. 145) is **DENIED. IT IS FURTHER ORDERED** that Plaintiff's Motion to Certify (Doc. 150) is **DENIED**.

DATED this 22nd day of June, 2026.

Brian Morris, Chief District Judge
United States District Court

23